1:17-CV-00267-ELH

---

UNITED STATES DISTRICT COURT FOR MARYLAND
(Baltimore Division)

---

ARLENE A. SMITH-SCOTT,

     Debtor-Appellant,

v.                                      Case No. 14-25022 - JS


U. S. Trustee

     Creditor-Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

Honorable James F. Schneider

---

BRIEF OF THE APPELLANT ARLENE A. SMITH-SCOTT

---

Prepared By:

Arlene A. Smith-Scott, Esq.
Strategic Law Group, LLC
16701 Melford Blvd., Suite 400
Bowie, Maryland 20715
Ph:   240.280.2370
Fax:  240.280.2381
StrategicLaw1@Gmail.com


**<u>ORAL ARGUMENT REQUESTED</u>**

## TABLE OF CONTENTS

**Debtor-Appellant Arlene A. Smith-Scott's Brief on Appeal**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . iii

Statement in Support of Oral Argument . . . . . . . . . . . . . . vi

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . vii

Request for Oral Argument . . . . . . . . . . . . . . . . . . . . viii

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . 7

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . 7

Summary of Argument

Argument

    I.    Whether the United States Bankruptcy Court abused its discretion by entering an order for Motion for Summary Judgment when jurisdiction rested with the United States District Court for Maryland in Baltimore . . . . . . . . . 10

    II.    The Trial Court Abused Its Discretion by Entering an Order for Summary Judgment when the United States Trustee has failed to provide evidentiary proof in the form of witnesses, affidavits and other documentation that could establish no genuine dispute, while the bankruptcy docket reflects appeals, motions to reconsider and a complaint against the Chapter 7 Trustee alleging 1) that they intentionally breached their fiduciary duties while representing the estate; (2) they was negligent while representing the estate; and (3) that their actions amounted to gross negligence . 20

        a.    The Appellant questioned whether an Order and/or Ruling by a Court be valid if it was based on information that is fraudulent, omitted, purposely

i

misrepresented, when the Players purpose is to benefit financially from the outcome of the Order of the Court? Case . . . . . . . . 24

III.    Whether the United States Bankruptcy Court abused its discretion when it entered an Order for Summary Judgment after allegations of misconduct and/or an abuse of process by the Chapter 7 Trustee, including perjury and self-dealing, which is evidenced in the Docket as well as the Complaint in the United States District Court for Maryland . . . . . . . . . . . . . . . 37

IV.    The United States Bankruptcy Court erred by granting the Motion for Summary Judgment when the Appellant's Constitutional right found in the Fourteenth Amendment to the United States which states that "no state shall deny to any person within its jurisdiction "the equal protection of the laws." . . . . . . 41

V.    Whether the statements by the Judge James F. Schneider, who joked to the U. S. Trustee and the Chapter 7 Trustee about the Respondent/Debtor request to sit down due to her recent appendectomy as the Respondent/Debtor was leaving the courtroom, reflects the discrimination of this court . . . . . . . . . 45

Conclusion . . . . . . . . . . . . . . . . . . 46

Certificate of Service . . . . . . . . . . . . . . . ix

Certificate of Compliance . . . . . . . . . . . . . . x

Appendix . . . . . . . . . . . . . . . . . xi

## TABLE OF AUTHORITIES

<u>Federal and State Cases</u>

*Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) . 7

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d  202, 1986 U. S. LEXIS 115, 54 U.S.L.W. 4755, 4 Fed. R. Serv, 3d (Callaghan) 1041, 12 Media L. Rep. 2297 (U.S. 1986) . . . . . . . . . . . . . . 20

*Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693, 98 L. Ed. 884, 1954 U.S. LEXIS 2095, 53 Ohio Op. 331 (U.S. 1954)  . . . . . . . . . . . 41

*Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434 (1972) . . . . . 34

*Cf. Sartor v. Arkansas Natural Gas Corp*., 321 U.S. 620, 627 (1944) . . . . . . 22

*DeLuca v. Atlantic Refining Co*., 176 F.2d 421, 423 (CA2 1949) . . . . . . . 22

*Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko),* 515 F.3d 319, 324 (4th Cir.2008). . 7

*Gertz v. Twin City Fire Ins. Co. (In re Infotopia, Inc.)*, No. 4:07 CV 02936, 2007 U.S. Dist. LEXIS 74087, 2007 WL 2859774, (N.D. Ohio Sept. 26, 2007) . . . . . 15

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989) . . . . . . . . . . . . . . . . . 19

*Hager v. Gibson,* 109 F.3d 201, 207 (4th Cir.1997) . . . . . . . . 7

*In re EquiMed, Inc.,* 259 B.R. 269, 273 (D. Md. 2001) . . . . . . . . 13

*In re Jacob Fraidin*, Case No. 92-52338-JS, Adv. Proc. 06-1795-JS; 401 B.R. 725(2008)  . . . . . . . . . . . . . 43

*In re Kieffer-Mickes, Inc*., 226 B.R. 204, 42 Fed. R. Serv. 3d 5 (B.A.P. 8th Cir. 1998) . 37

*In re Merryweather Importers, Inc.,* 179 B.R. 61 (D. Md. 1995) . . . . . . 12

*In re Millennium Studios, Inc.,* 286 B.R. 300, 303 (D. Md. 2002) . . . . . . 13

*In Re Pauline*, 119 B.R. 727 (9th Cir. BAP 1990) . . . . . . . . 38

*In re Preston Lumber Corp*., 199 B.R. 415 (Bankr. N.D. Cal. 1996) . . . . . 37

*In re Prosser*, 2008 U.S. Dist. LEXIS 98786, 50 V.I. 840 . . . . . . . . 14

*In re Stansbury Poplar Place, Inc.,* 13 F.3d 122 (4th Cir. 1993) . . . . . . 14

*In re Toms*, 229 B.R. 646 (Bankr. E.D. Pa. 1999) . . . . . . . . 37

*In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003) . . . . . . 15

*Italian Colors Res. V. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.),* 554 F.3d 300, 316 n. 11(2d Cir. 2009) . . . . . . . 7

*Kerusa v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708(GEL), 2004 U.S. Dist. LEXIS 8168, 2004 WL 1048239 (S.D.N.Y. May 7, 2004). . . . . . . 15

*Liteky v. U.S.*, 114 S.Ct. 1147 (1994) . . . . . . . . . . . 46

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194 (1988) . . 46

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538, 1986 U.S. LEXIS 38, 54 U.S.L.W. 4319, 1986-1 Trade Cas. (CCH) P67,004, 4 Fed. R. Serv. 3d (Callaghan) 368 (U.S. 1986) . . . . . . . . 22

*Norwest Bank v. Ahlers*, 485 U.S. 197 (1988) . . . . . . . . . 17

*Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson*, No. 06 C 0869, 2006 U.S. Dist. LEXIS 32602, 2006 WL 1457786, (N.D. Ill. May 23, 2006) . . . . . 16

*Smith v. Ruby (In re Public Access Technology.com, Inc.),* 307 B.R. 500, 504 (E.D.Va.2004) . . . . . . . . . . . . . . 7

*Snodgrass v. New Century Mortg. Corp.*, 358 B.R. 675, 678 (S.D. W. Va. 2006) . . 13

*Standish v. Jackson (In re Albertson)*, 535 B.R. 662, 2015 U.S. Dist. LEXIS 99334 (S.D. W. Va. 2015) . . . . . . . . . . . . . . 15

*Stern v. Marshall*, 131 S. Ct. 2594, 2605, 180 L. Ed. 2d 475 (2011) . . . . . . 15

*United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985) . . . . . . . 46

*Tidewater Fin. Co. v. Williams,* 498 F.3d 249, 254 (4th Cir.2007). . . . . . 7

*Vieira v. AGM, II, LLC* , 366 B.R. 532, 2007 U.S. Dist. LEXIS 18936 (D.S.C. 2007) . 14

*Williemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir. 1985) . . . . . . . 35

*U.S. v. DeTemple*, 162 F.3d 279 (4th Cir. 1998) . . . . . . . . 46

*Zak v. Chelsea Therapeutics International, Ltd,* No. 13-2370 (4th Cir. March 16, 2015) . . 23

**United States Constitution**

Fifth Amendment to the United States Constitution . . . . . . . . . 15, 23

Seventh Amendment to the United States Constitution . . . . . . . . 19

Fourteenth Amendment to the United States Constitution . . . . . . 12, 15, 23, 41

Article 24 in the Maryland Declaration of Rights . . . . . . . . . 15, 23, 41

**Statutes and Rules:**

Title 11 of the U.S.C. §105 . . . . . . . . . . . . . . . . 17

Title 11 of the U.S.C. §157 . . . . . . . . . . . . . 10, 11, 12, 14, 15

Title 11 of the U.S.C. §158 . . . . . . . . . . . . . . . . 7

Title 11 of the U.S.C. §502 . . . . . . . . . . . . . . . . 35

Title 11 of the U.S.C. §544 . . . . . . . . . . . . . . . . 34

Title 11 of the U.S.C. §558 . . . . . . . . . . . . . . . 31, 32

Title 11 of the U.S.C. §727 . . . . . . . . . . . . . . . . 1, 7

Title 11 of the U.S.C. §1112 . . . . . . . . . . . . . . . . 18

Title 12 of the U.S.C. §5301 . . . . . . . . . . . . . . . 39, 44

Title 12 of the U.S.C. §5219 . . . . . . . . . . . . . . . 39, 44

Title 28 of the U.S.C. §351 . . . . . . . . . . . . . . . . 45

Title 28 of the U.S.C. §455 . . . . . . . . . . . . . . . 11, 43

Title 28 U.S. C. §1334 . . . . . . . . . . . . . . . . . 19

Title 28 U.S. C. §2106 . . . . . . . . . . . . . . . . . 11

Title 42 U.S. C. §1983 . . . . . . . . . . . . . . . . . 42

Federal Rule of Bankruptcy Procedure, Rule 5004 . . . . . . . . 11

Federal Rule of Civil Procedure, Rule 56 . . . . . . . . . 20, 21, 22

**State Authorities**

Article 9 of the Uniform Commercial Code . . . . . . . . . . 15, 44

**Other Authorities**

10A C. Wright, A. Miller, & M. Kane, **Federal** Practice and **Procedure** § 2727 (1983)
. . . . . . . . . . . . . . . . . . . . . . . . 28

Clark, Special Problems in Drafting and Interpreting Procedural Codes and **Rules**, 3
Vand. L. Rev. 493, 504-505 (1950) .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   28


U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees, (2012) .   .   38

## JURISDICTIONAL STATEMENT

This appeal arises from an adversarial case filed in the United States Bankruptcy Court for Maryland in Baltimore from the order dated January 23, 2017 granting motion for summary judgment denying discharge as well as the order dated February 10, 2017, which was the order certifying judgment as final.  The Bankruptcy Court had jurisdiction to enter the final order pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and 1334. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

## REQUEST FOR ORAL ARGUMENT

This case presents the question whether the United States Bankruptcy Court would have taken the same actions against this Appellant, if she had not been pro se, a woman and an African American. Discrimination within the state judicial system for Maryland and the city of Baltimore has been reported by multiple media outlets, however, the Appellant argues that the same discrimination that has been reported in the criminal judicial system is also affecting the federal court system, including its civil division, within the state of Maryland and the city of Baltimore. This case raises issues as to the equal protection of the laws and the application of the laws as it pertains to this Appellant. Given the importance of this issue; this Appellant requests oral arguments.

/s/ Arlene A. Smith-Scott
Arlene A. Smith-Scott, Esq

## STATEMENT OF THE ISSUES

This appeal arises from an adversarial case filed in the United States Bankruptcy Court for Maryland in Baltimore from the order dated January 23, 2017 granting motion for summary judgment denying discharge (J.A. 17/Dkt. 15) as well as the order dated February 10, 2017, which was the order certifying judgment as final. (J.A. 15/Dkt. 27)

On June 20, 2016, the United States Trustee filed a Complaint to Deny or Revoke Discharge pursuant to Section 727 of the United States Code. (J.A. 145/Dkt. 1) Later, the United States Trustee filed a Motion for Summary Judgment (J. A. 195/ Dkt. 9). The Appellees argued that there was no genuine issue as to any material fact, and that they were entitled to judgment as a matter of law, denying Appellant a discharge. The Appellant opposed the Motion for Summary Judgment; however, it is the Appellant's contention that the record in the Chapter 11 Bankruptcy Filing, Case Number 14-25022, reflects an ongoing material disputes that should have caused an impartial judiciary to deny the Motion for Summary Judgment. (J. A. 204)

### THERE WAS A MATERIAL DISPUTE!

The Appellant relies on evidence that was filed in the United States Bankruptcy Court for Maryland in Baltimore, the United States Securities and Exchange Commission, Filings by the Chapter 7 Trustee, Transcripts from the Honorable Judge Derby, Lay Witnesses, Emails from Prior Counsel, Emails from Opposing Counsel, Back-Dated Mortgage Documents, and various other documents to reflect the fact that this Appellant/Debtor did not act to hinder or interfere with the United States Bankruptcy Court for Maryland in Baltimore, but to prove that the two secured creditors that were before the court in which the court relied, provided information that misrepresented the facts and/or were fraudulent. (J. A. 19; J. A. 204)

The Appellant's first issue was whether the Howard Bank formerly known as the Patapsco Bank's mortgage debts were "matured" as alleged by Howard Bank and if they were entitled to the relief they sought. The Debtor filed a previous Chapter 11 Bankruptcy – Case Number 09-12469 with the Legal Assistance of Marc Kivitz. The Case was confirmed on March 21, 2011. (J.A. 154). The Disclosure Statement, Third

1

Amended Disclosure Statement, reflected the terms of the consented modifications by the Howard Bank.  It stated that the mortgage held by the Howard Bank on 367 Main Street, Laurel, Maryland 20707 and the mortgage held by the Howard Bank on 511 Main Street, Laurel, Maryland 20707 will be for a term of four years with one additional term, making it for five years. (J. A. 170).  After having only four years on the mortgages, the Howard Bank argued that their loan had matured and sought a conversion to a Chapter 7 Bankruptcy, which was granted.

The Appellant argues that this act of granting Howard Bank's motion for the conversion from a Chapter 11 Reorganization to a Chapter 7 Liquidation was material to the adversarial claim and that she was not attempting to delay or hinder the Chapter 7 Liquidation.  In fact, this Appellant had provided documentation, including the Third Amended Disclosure Statement as filed in the Bankruptcy Case #09-12469, the Loan Modification Documents as filed in the Maryland Land Records as well as the emails from Legal Counsels. These Documents proved that there was indeed a material fact that should have been considered when the Bankruptcy Court made its order to convert and/or when it denied the Appellant's motion for reconsideration. At the very least, the Appellant was entitled to judicial notice of the prior filings and a review of the emails between the Appellant's Legal Counsel as well as the Creditor's Legal Counsel to clarify the intent of the parties.

The Appellant's second issue was whether U. S. Bank, NA, as Indenture Trustee, for Waterfall Victoria Mortgage Trust, 2011 SBC3, was the true holder of the mortgage note and entitled to enforce when there was mounting evidence against the existence of the entity of Waterfall Victoria Mortgage Trust, 2011 SBC3.  The simple question that the Appellant asked,  if Waterfall Victoria Mortgage Trust, 2011 SBC3 does not exist, then how could U. S. Bank, NA, be its Indentured Trustee and having standing before the U. S. Bankruptcy Court.  The issue of the very "existence" of the Holder of the Mortgage Note represents a material dispute, not an attempt to delay or hinder the proceedings as argued by the Appellees.

2

The Appellant relied upon the following items which caused her to correctly question the issue of standing as to Waterfall Victoria Mortgage Trust, 2011 SBC3:

a. "Back-Dated" assignments of Deed of Trust from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust, 2011, SBC3 by TWO-YEARS

b. "Back-Dated" assignments of Leases and Rents from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3.

c. A S/11-A filing with the United States Securities and Exchange Commission dated January 5, 2015, reflected that the "alleged holder of the note," Waterfall Victoria Mortgage Trust 2011 SBC3 is a subsidiary of Sutherland Asset Management Corp. The filing contained audits and certifications that the information contained in it was true and accurate.

   - Stated Waterfall Victoria Mortgage Trust 2011 SBC3 had a zero balance as of September, 2013.

   - Stated that Waterfall Victoria Mortgage Trust 2011 SBC3 was completed in 2011. This was two years prior to the transfer from Waterfall Victoria Master Fund, Ltd to U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust, 2011 SBC3.

   - Stated that the Trust, when it did hold property, never held ownership interest in any properties in the entire state of Maryland.

d. The Assignment of Deed of Trust, from Greenpoint Mortgage Funding, Inc. to Waterfall Victoria Master Fund, Ltd does NOT CONTAIN nor have any CONNECTION to the MORTGAGEE OF RECORD.

3

 e. The Assignment of Rents and Leases, from Greenpoint Mortgage Funding, Inc. to Waterfall Victoria Master Fund, Ltd does NOT CONTAIN nor have any CONNECTION to the MORTGAGEE OF RECORD

 f. The New York State Department of Corporation reflects that Waterfall Victoria Master Fund, LTD, the "purported purchaser" who entered into the Loan Sale Agreement on June 23, 2011, did not register its name until three months later on September 15, 2011

 g. Affidavit from Paula Rush and CVV to reflect Experience

Also, the Appellant relied upon statements made by the Honorable Bankruptcy Judge Stephen Derby when faced with the same issue in her prior bankruptcy case:

 "What's of concern to the Court is what's in the best interest of the estate as well, and it's suggested that it would be good to put this in a Chapter 7 bankruptcy case and have a Trustee sort of rummage around and see if he can create any value for creditors. That's a pretty weak basis for saying it be sustained and a system should be burdened with administration for no apparent reason." (J.A. 71)

It is material that when faced with the same issue, a recognized scholar stated that conversion does not provide an adequate remedy when considering the best interest of the estate.

### CHAPTER 7 TRUSTEE FEE APPLICATION

Here, the Chapter 7 Trustee also makes the argument that the only party that benefits from administrating the estate is the Chapter 7 Trustee and his Law

Partner, Orbie Shively, which is evidenced in the "Trustee's First Interim Application for Approval of Attorney's Fees" (J.A. 76) where he states that he is entitled to $45,060.00 in attorney fees, not to mention any commission from the sale of real estate. The Chapter 7 Trustee has not disclosed what, if anything, the unsecured creditors will receive.

**WHAT ACTION DID THE APPELLEE PROVIDE AS EVIDENCE THAT THIS APPELLANT TOOK WHICH WAS PURPOSELY INTENDED TO HINDER OR DELAY THE BANKRUPTCY LIQUIDATION?**

At the hearing on the Appellee's Motion for Summary Judgment, the Appellees did not provide evidence that the Appellant purposely intended to hinder or delay the bankruptcy liquidation. In fact, the Court began the proceedings by making a statement that reflected his belief, without any evidence being provided by the Appellees. When, this Appellant went before the U. S. Trustee in this case, Edmund A. Goldberg, for the Meeting of the Creditors. The required documents were provided. The fees paid. (Dkt. 68) Monthly Operating Reports Filed. (Dkt. 92, Dkt. 93, Dkt. 94, Dkt. 125). Amended Disclosure Statement filed. (Dkt. 126) Plan filed. (Dkt. 127) Filed an objection to Claim Number 3 – The Patapsco Bank (Dkt. 116) filed an objection to Claim Number 6 – U. S. Bank National Association. (Dkt. 115)

Amended Order Converting Case from Chapter 11 to a Chapter 7, RE: (Dkt. 95) Notice of Appeal filed by Appellant. (Dkt. 145) Motion to Quash Subpoena from AMS Estate Services (Dkt. 150) Later Granted. Motion to Quash Subpoena from Cohen Financial Services (Dkt. 151). Later Granted. Motion to Stay Pending Appeal and Waiver of Supersedeas Bond or Alternatively to Establish Bond (Dkt. 192) Order terminating automatic stay for the Patapsco Bank (Dkt. 204) (Dkt. 205) Application to Compromise Controversy by Chapter 7 Trustee (Dkt. 228) Motion for Turnover of Property (Records Regarding Leases, Security Deposits, Account Receivable, Security Deposits, Any Receivables Collected After Conversion to Chapter 7, 2013 and 2014 Income Tax Returns by Chapter 7 Trustee. On September 10, 2015, an Order Denying

5

Motion to Stay Pending Appeal is entered. (Dkt. 242) Order granting turnover of property for Chapter 7 Trustee. (Dkt. 256) At Dkt. 233, a Motion to Alter or Amend Order Pursuant to 60(b) Due to newly Discovered Evidence, Mistake Fraud was filed by the Appellant. Later, at Dkt. 273, an Order Approving Trustee's Motion for Sale of 10 Stanley Drive, Catonsville Free and Clear of Liens and Encumbrances.

On or about April 25, 2016, the Appellant filed a Motion to Remove Trustee, George Liebmann, Chapter 7 Trustee, for cause including Conversion, Intimidation, harassment, Failure to Act in Good Faith and Breach of Fiduciary Duty.

Also, the Appellant filed a Motion for Withdrawal of Reference Bankruptcy Case at Dkt. 401. After that filing, the U. S. Trustee filed their Adversary Complaint alleging that the Appellant Delayed and/or Hinder the Liquidation of the Estate.

**WHY IS THIS APPELLANT DENIED HER LEGAL RIGHTS, IS THE ORDER FOR SUMMARY JUDGMENT MEANT TO BE PUNITIVE?**

On December 21, 2016, the Court entered an order granting motion for civil contempt, in part, for unauthorized use of cash collateral. (Dkt. 322) However, the conversion to the Chapter 7 was eight months previous and the Lender, Patapsco Bank, received a motion to lift stay seven months prior to this order.

The Appellant was threatened with jail time if she did not immediately leave a building in which her business rented and occupied. A mixed use property that the Appellant owned and the Creditor was no longer under the jurisdiction of the U. S. Bankruptcy Court due their Motion for Relief from Stay arguing their loans had "Matured." In fact the United States Federal Marshalls did indeed come in with the Chapter 7 Trustee to evict the business.

The Appellant's business bank account was garnished by the Chapter 7 Trustee. The operating account included fees that were received and to be used as filing fees for clients. Again, this business was a tenant and not subject to the

bankruptcy jurisdiction.  Strategic Law Group, LLC, is a separate entity, with its own tax payer identification number.  And, it was in good standing.

Yet, when she appeals a ruling that is based on omission, misrepresentation and fraud, she is hindering the process and is denied a discharge.

## STANDARD OF REVIEW

Appeals from bankruptcy courts are governed by 28 U.S.C. § 158, which states that the district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" and "with leave of the court, from other interlocutory orders and decrees." 28 U.S.C. § 158(a) (1)-(2). A district court "may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. In reviewing a bankruptcy court's judgment, the district court reviews legal conclusions de novo and findings of facts for clear error. *Tidewater Fin. Co. v. Williams,* 498 F.3d 249, 254 (4th Cir.2007). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *accord Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko),* 515 F.3d 319, 324 (4th Cir.2008). Specifically with regards to motions for summary judgment, a district court reviews the bankruptcy court's decision de novo. *Smith v. Ruby (In re Public Access Technology.com, Inc.),* 307 B.R. 500, 504 (E.D.Va.2004) (citing *Hager v. Gibson,* 109 F.3d 201, 207 (4th Cir.1997).  Mixed questions of law and fact are reviewed "either *de novo* or under the clearly erroneous standard depending on whether the question is predominately legal or factual." *Id. (citing Italian Colors Res. V. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.),* 554 F.3d 300, 316 n. 11(2d Cir. 2009).

## STATEMENT OF THE CASE

The Appellees filed a Motion for Summary Judgment pursuant to a Complaint that was filed pursuant to Title 11 of the United States Code, Section 727, which states

the court shall grant the debtor a discharge, unless (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed.

In the case at hand, the Appellee's motion for summary judgment stems from the fact that this Appellant has filed Motion to Reconsiders, Appeals and Motion to Remove the Chapter 7 Trustee. After the case was converted from a Chapter 11 to a Chapter 7 Bankruptcy upon a Motion filed by a secured Creditor, Howard Bank, who argued that their debt had matured when it had not and the motion was joined by U. S. Bank, NA as Indentured Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3, who was not entitled to enforce the debt based on the evidence that their own parent company filed in the U. S. Securities and Exchange Commission.

The Appellant is a pro se litigant, who filed a Chapter 11 Bankruptcy on September 28, 2014 which was converted upon motion by the Howard Bank formerly known as the Patapsco Bank. This was the Appellant's second bankruptcy filing.  The first bankruptcy filing was on February 17, 2009 and it was confirmed on or about March 17, 2011, however, the Appellant believed at that time that maybe she could seek financing on several of her properties and motioned the court for a dismissal of the first bankruptcy filing.

The Appellant was the owner of one residential and three investment properties. Each of the properties was encumbered by a Deed of Trust.  The first property is her residence which is located at 1359 Fishing Creek Road, Annapolis, Maryland 21403. Ocwen Loan Servicing was reflected as the Lender on Schedule D and it was owed approximately Nine Hundred and Seventy-Six Thousand, ($976,000) with a value of One Million One Hundred Thousand Dollars, ($1,100,000.00).

The second is an investment property located at 367 Main Street, Laurel, Maryland 20707.  The Patapsco Bank was listed as the Lender with a balance of approximately Four Hundred and Twenty Eight Thousand Dollars, ($428,000) and a value of Two Hundred and Ninety Five Thousand Dollars, ($295,000.00).

8

The third is an investment property located at 511 Main Street, Laurel, Maryland 20707. The Patapsco Bank was listed as the Lender with a balance of approximately Four Hundred and Seventeen Thousand Five Hundred Dollars ($417,000) and a value of Two Hundred and Ninety Five Thousand Dollars, ($295,000.00).

And, the fourth property was 10 Stanley Drive, Catonsville, Maryland 21228 a twelve unit apartment building.

The Appellant has two basic arguments. The first is that the Howard Bank formerly known as the Patapsco Bank misrepresented the fact that their loan had matured which was the basis for the conversion and that the Court failed to take judicial notice of the previous filings and to allow testimony from the Appellant and her witness, while granting the Motion to Lift Stays and the Motion for Contempt since they were based upon untrue statement of facts.

The second argument is that Waterfall Victoria Mortgage Trust, 2011, SBC3, was no longer in existence and that the court erred by failing to review the filing in the United States Securities and Exchange Commission by their parent company, which explained that the Trust had to be liquidated in order for their business entity to change its operational structure. The Appellant also argued the validity of back dated legal instruments and missing, but necessary documents.

The essence of this appeal is that there was indeed a genuine material dispute that caused the Appellant to protest her treatment by appealing to a higher authority, which is a constitutional right. And, that the Motion for Summary Judgment was punitive. A ruling prior to the United States Bankruptcy Judge James F. Schneider's retirement as well as the U. S. Trustee, Trusted Friend and Trustee, Edmund Goldberg, who also was retiring.

## ARGUMENT

**A. Whether the United States Bankruptcy Court abused its discretion by entering an order for Motion for Summary Judgment when jurisdiction rested with the United States District Court for Maryland in Baltimore.**

On July 8, 2016, this Appellant filed a Motion for Withdrawal of Reference Bankruptcy Case and Associated Cases, which is Dkt 401. The Filing Fee was made of One Hundred and Seventy-Six Dollars, ($176.00). The Certificate of Transmission of Motion for Withdrawal of Reference occurred on August 4, 2016. And, the Notice of Docketing Record from District Court, Civil Action Number, 1:16-cv-02770, with District Court Judge Levi Russell, III, was assigned as to Dkt 401, Motion for Withdrawal of Reference. As of February 10, 2017, the United States Bankruptcy Court did not receive jurisdiction back from the United States District Court or notice that the Honorable Judge Levi Russell, III was no longer presiding over the case.

Title 28 U.S.C. § 157(d), provides the authority for a District Court to withdraw the reference is divided into two parts, mandatory withdrawal of the reference ("if the court determines that resolution of the proceeding requires consideration of both Title 11 (the Bankruptcy Code) and other laws of the United States regulating organizations or activities affecting interstate commerce") and discretionary withdrawal of the reference ("for cause shown").

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

Title 28 U.S.C. § 157(e), states, "if the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties."

## ISSUES RAISED REQUIRING WITHDRAWAL OF REFERENCE

The Appellant sought a jury trial in her Answer to the Complaint filed in the adversarial proceeding, which was filed by the U. S. Trustee, which was in writing and timely filed, with no objection by any party.

The Appellant filed a complaint in the United States District Court for Baltimore against the Chapter 7 Trustee, his attorney and their law firm, which they have hired to oversee the Debtor's Chapter 7 case. The complaint alleges bankruptcy related issues as well as issues of law that are governed by other aspect of federal and state law that surpasses the jurisdiction of the bankruptcy court.

The Appellant filed a Motion to Recuse the United States Bankruptcy Judge, James F. Schneider, pursuant to Title 28 of the U.S.C. § 455, Title 28 of the U.S.C. § 2106 and the Federal Rule of Bankruptcy Procedure, Rule 5004. In her Motion, the Debtor relied upon the issue of "Impartiality" which could be found in Title 28 of the U.S.C. § 455, "Disqualification of justice, judge or magistrate judge" which deals not only with actual bias and other forms of partiality, but also with the appearance of partiality. Disqualification of justice, judge or magistrate judge (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. (b) He shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

In furtherance of the Appellant's Motion to Recuse, the Order granting the Motion for Summary Judgment is from a motion, by the United States Trustee's Office,

11

represented by Edmund A. Goldberg, a personal friend and individual, who frequently takes lunch breaks with the United States Bankruptcy Judge who presided over this case. It could be inferred that conversations between the two would include those that cover similar interests, daily events and common or shared experiences, including cases that requires both of them to participate in one way or another.  Therefore, ex parte communication could be easily rationalized, which furthers the Appellants belief that the United States Bankruptcy Judge was bias and partial.

The Appellant also argued that the U. S. Bankruptcy Court violated the Equal Protection Clause under the Fourteenth Amendment of the United States Constitution which states that "no state shall deny to any person within its jurisdiction "the equal protection of the laws."

The Honorable Duncan W. Keir, Chief Judge U.S. Bankruptcy Court for the District of Maryland and Richard L. Wasserman, Esq., VENABLE LLP stated the following:

"With respect to mandatory withdrawal of the reference, the statutory language appears to be quite broad. Nevertheless, it has been observed that "the great weight of the case law interpreting § 157(d) holds that this seemingly broad language concerning mandatory withdrawal should be narrowly read. . . . The fact that resolution of the matters in question calls merely for consideration or application of both bankruptcy law and other federal laws is plainly insufficient, in that mandatory withdrawal should only be made where substantial and material consideration of non-bankruptcy statutes is necessary in the case." In re Merryweather Importers, Inc., 179 B.R. 61, 62 (D. Md. 1995). Thus, mandatory withdrawal has been denied in cases involving "straightforward application of federal statutes to a particular set of facts. . . . By contrast, cases involving federal questions that are complex or are of first impression must be withdrawn from reference."

They continued by stating the following:

> "With respect to discretionary withdrawal of the reference (sometimes
> called permissive withdrawal), the statutory test is "for cause shown."
> Cases have recognized that the District Court has broad discretion in
> deciding whether the reference should be withdrawn for cause shown. See
> In re Millennium Studios, Inc., 286 B.R. 300, 303 (D. Md. 2002). Among
> the factors to be considered by the court are whether the matter at issue
> between the parties is "core" within the meaning of 28 U.S.C. § 157(b)(2)
> and "the uniformity of bankruptcy administration, forum shopping and
> confusion of fora, conservation of creditor and debtor resources,
> expediency of the bankruptcy proceeding, and the fact that only equitable
> issues are posed, not requiring a jury trial but falling within the traditional
> equitable powers of the bankruptcy judge as chancellor." In re Millennium
> Studios, Inc., 286 B.R. at 303; In re EquiMed, Inc., 259 B.R. 269, 273 (D.
> Md. 2001); In re Merryweather Importers, Inc., 179 B.R. at 63. Additional
> factors identified also include whether withdrawal "would promote judicial
> economy and the economic use of the parties' resources." In re EquiMed,
> Inc., 254 B.R. 347, 351 (D. Md. 2000). Finally, it has been stated that it is
> the movant's burden to show cause for discretionary withdrawal of the
> reference. See In re Millennium Studios, Inc., 286 B.R. at 303-304."

Withdrawal of the reference for cause on motion of a party is commonly referred
to as "permissive withdrawal." *See, e.g., Snodgrass v. New Century Mortg. Corp.*, 358
B.R. 675, 678 (S.D. W. Va. 2006).

## JUDGE WHO PRESIDE OVER JURY TRIAL
## SHOULD PRESIDE OVER PRETRIAL MOTIONS

The Appellant asserts that pretrial motions should be before the judge who will preside over the jury trial. "Where both legal and equitable issues are presented in a single case, only under the most imperative circumstances can the right to a jury trial of legal issues be lost through prior determination of equitable claims. This is true regardless of whether the legal claims are characterized as incidental to the equitable claims; as long as there is a legal claim, the jury trial rights it creates control." *In re Prosser*, 2008 U.S. Dist. LEXIS 98786, 50 V.I. 840.

Such a case may be tried before a bankruptcy judge and a jury with the authorization of the district court and the consent of the parties. In any event, an adversary proceeding may be transferred to the district court if a jury trial is required. *See In re Stansbury Poplar Place, Inc.,* 13 F.3d 122 (4th Cir. 1993).

Here, in this case, the Bankruptcy Judge was not specially designated to exercise such jurisdiction by the district court and the Appellant did not expressly consent to the Bankruptcy Judge presiding over the pretrial matters and/or trial matters.

## DESIGNATING FACTORS FOR WITHDRAWAL

In the case of *Vieira v. AGM, II, LLC* , 366 B.R. 532, 2007 U.S. Dist. LEXIS 18936 (D.S.C. 2007), the court stated that the district court had discretionary power to grant a plaintiff's motion to withdraw pursuant to 28 U.S.C.S. § 157. The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. Although the Fourth Circuit has not enumerated the factors to consider when determining whether "cause" has been shown, other circuits are in substantial agreement on the factors that should be weighed in considering a discretionary withdrawal of reference. These factors include: (i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv)

14

the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial. Some courts view the core/non-core factor as a threshold question that must be answered before analysis may proceed and is determinative of most of the other factors, while other courts simply place substantial weight on the core/non-core factor. The better view is that discretionary withdrawal of reference should be determined on a case-by-case basis by weighing all the factors presented in a particular case, including the core/non-core distinction. *In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D. Va. 2003). *Standish v. Jackson (In re Albertson)*, 535 B.R. 662, 2015 U.S. Dist. LEXIS 99334 (S.D. W. Va. 2015)

(1) **Whether the proceeding is core or non-core.**

A core proceeding must "arise under" title 11 or "arise in" a title 11 case. 28 U.S.C. § 157(b)(1)(2); *Stern v. Marshall*, 131 S. Ct. 2594, 2605, 180 L. Ed. 2d 475 (2011). In the case at hand, there are both core and non-core issues involved. As to the Appellee, the issue as to whether the Appellant hindered or purposely delayed the bankruptcy process, it would be a core issue before this court. However, the issues that the Appellant has raised, includes, violation of the Uniform Commercial Code, Truth in Lending Issues, violation of the Due Process and Equal Protection Clause as found both in the United States Constitution as well as the Maryland Declaration of Rights, Consumer Issues, Breach of Fiduciary Duty, etc. which are non-core, not necessarily related to the bankruptcy laws.

Only a district court — not a bankruptcy court — may enter final judgment in a non-core, "related to" proceeding. *Kerusa v. W10Z/515 Real Estate Ltd. P'ship*, No. 04 Civ. 708(GEL), 2004 U.S. Dist. LEXIS 8168, 2004 WL 1048239 (S.D.N.Y. May 7, 2004).

A non-core proceeding has four characteristics: (1) it is not specifically listed as a core proceeding in 28 U. S. C. Section 157(b)(2)(B)-(N) it existed prior to the bankruptcy case; (3) it would continue to exist independent of the provisions of Title 11; and (4) the parties' rights, obligations, or both are not significantly affected by the filing of the bankruptcy. *Gertz v. Twin City Fire Ins. Co. (In re Infotopia, Inc.)*, No. 4:07 CV 02936,

15

2007 U.S. Dist. LEXIS 74087, 2007 WL 2859774, (N.D. Ohio Sept. 26,

2007); see *Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson*, No. 06 C

0869, 2006 U.S. Dist. LEXIS 32602, 2006 WL 1457786, (N.D. Ill. May 23, 2006).

### (2) Uniformity of Bankruptcy Issues

The laws should be applied in a uniformed fashion, however, here in this case,

they have not been.  One of the issues that was before the bankruptcy court was whether

the United States Bankruptcy Court in Baltimore was uniformly applying the bankruptcy

laws or whether pro se applicants were treated different from those who were represented

by friends of the court.  The Appellant as a pro se bankruptcy filer believes that she was

prejudiced as a pro se bankruptcy filer.

For example, the Bankruptcy Judge refused to review an Order that he granted in

March, 2011, to assist in the determination of the truth of whether a creditor's mortgage

had become due and owing, when the Appellant argued it had not.  Another example, the

circumstances surrounding the issues as to whether the Appellant was allowed to buy out

her estate manifested in a prejudicial manner with the justification that since the

Appellant filed in 2009, she was no longer eligible for the use of the bankruptcy tool in a

2014 bankruptcy filing, which is contrary to the Title 11 of the United States Code.

Another example, the Bankruptcy Court stated that the Appellant was

inappropriate when a Disclosure Statement that was prepared had language that a

previous disclosure statement contained, when the Disclosure Statement was amended

prior to hearing.  The Bankruptcy Court still made disparaging remarks while denying the

Appellant the use of the Amended Disclosure Statement.  Example, converting a case that

could have been cram down, stating that the Appellant did not have the expertise and that

the creditor's loan had matured, when it had not, while, the Disclosure Statement proved

it could be done financially.

### (3) Expediting the Bankruptcy Process and Promoting Judicial Economy

Title 11 of the United States Code speaks to the necessity of expediting the

bankruptcy process and promoting judicial economy.  However, the Bankruptcy Court is

a court of equity. Consistent with that status, the U.S. Bankruptcy Code includes a

provision, §105(a), which provides a broad grant of authority to the Bankruptcy Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

On the other hand, the United States Supreme Court in *Norwest Bank v. Ahlers*, 485 U.S. 197 (1988) made it clear that the broad equitable powers of §105(a) cannot be used by the bankruptcy court in a manner that is inconsistent with express statutory provisions of the Bankruptcy Code: "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."

Here, the Bankruptcy Court acted in a manner that is inconsistent with express statutory provisions of the Bankruptcy Code. The Appellant was deprived of real and personal property by way of the rulings in this bankruptcy court. The United States Marshalls were used to remove her business from a building, where it was a tenant. The business bank account was garnished when it was not a party to the bankruptcy estate. And, persons and entity was given standing in the proceedings, when they did not have standing to take any action in the proceedings. The Bankruptcy Code was not meant to be a vehicle for a Creditor to take property, when they did not meet the minimum requirement in State Court.

**(4) The Efficient Use of the Debtor's and Creditors' Resources.**

In the case at hand, the attorney for the Chapter 7 Trustee entered an Application for Fees which approximated $45,000.00. At this time, it appears that the unsecured creditors would receive approximately $1,000.00, if that. It is fair to say that the use of the Bankruptcy Code, to force a conversion, was not the adequate use of the Debtor's and Creditor's Resources.

In the Appellant's prior bankruptcy, the same Creditors filed a Motion to Convert from a Chapter 11 to a Chapter 7 Bankruptcy. In response to that Motion, on March 27, 2014, the Honorable E. Stephen Derby presided over a hearing that raised the issue as to what was best for the estate in the Debtor's Chapter 11 Case. He made the following statement,

17

"Okay. I took a little break so I could actually focus on the language of 1112 pursuant to which this motion to dismiss is filed. On request of a party-in-interest after notice and a hearing, the Court shall convert the case under this chapter to a case under Chapter 7 or dismiss the case under this chapter whichever is in the best interest of creditors and the assignment. Okay. It suggests I've got to have some reasons. All we've heard is argument about the creditors and what's in their best interests and everybody -- the creditors as to who were pointing out their best interests aren't here.  What's in the best interest of the estate has been the question.

What's of concern to the Court is what's in the best interest of the estate as well, and it's suggested that it would be good to put this in a Chapter 7 and have a trustee sort of rummage around and see if he can create any value for creditors. That's a pretty weak basis for saying it be sustained and a system should be burdened with administration for no apparent reason. . ."

The conversion from a Chapter 11 to a Chapter 7 has benefited the law firm of the Chapter 7 Trustee as well as his Partner, Orbie Shively.  The conversion from a Chapter 11 to a Chapter 7 has also benefit U. S. Bank , NA, as Indenture Trustee, for Waterfall Victoria Mortgage Trust 2011 SBC3.  A Creditor in which the filing for its parent company states in its filings with the United States Securities and Exchange Commission does not exist, with certified statements from Auditors, Lawyers and Board Members. Yet, when asked, who is before the court, the Chapter 7 Trustee argues that the Appellant does not have standing to ask that question.

**(5) The Reduction of Forum Shopping**

The Goal in any Legal Proceeding is to offer an impartial Judge to oversee the legal proceedings.  The Appellant filed a Complaint against the Chapter 7 Trustee, his Partner, Orbie Shively as well as their Law Firm.  The complaint alleged that they (1)

18

intentionally breached their fiduciary duties while representing the estate; (2) were negligent while representing the estate; and (3) how their actions amounted to gross negligence, which caused financial and emotion injuries to the Plaintiff. This was before additional causes of actions and the Application of Fees for $45,000.00.

The Attorney for the Chapter 7 Trustee, after the Appellant filed the case in the United States District Court for Baltimore and paid the required fees and had them served, the Attorney for the Chapter 7 Trustee, re-filed the case in the United States Bankruptcy Court before Judge James F. Schneider.

The actions taken by the Attorney for the Chapter 7 Trustee amounts to forum shopping, especially, when he could be assured of the outcome, when the Judge has shown disdain for the Appellant.

### (6) Preservation of the Right to a Jury Trial

To determine whether a right to a jury trial attaches to a claim, courts use a three-part test. First, a court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989). Next, a court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* The second part of this test "is more important than the first." Last, "if, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment," then a court must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder."

The Appellant has filed her Complaint seeking a Jury Trial. The U. S. Trustee has filed an Adversarial Proceeding and the Appellant has respondent with a Request for a Jury Trial. The United States District Court has original jurisdiction over bankruptcy cases in the United States District Court. 28 U.S.C. § 1334(a).

## PREJUDICIAL HARM TO THE APPELLANT

Here, the Appellant has proven extenuating circumstances or prejudicial harm, which denied the Appellant an opportunity to have her debts discharged when the United States Bankruptcy Court no longer had jurisdiction of the bankruptcy case.

**II.     The Trial Court Abused Its Discretion by Entering an Order for Summary Judgment when the United States Trustee has failed to provide evidentiary proof in the form of witnesses, affidavits and other documentation, while the bankruptcy docket reflects appeals, motions to reconsider and a complaint against the Chapter 7 Trustee alleging 1) that they intentionally breached their fiduciary duties while representing the estate; (2) they was negligent while representing the estate; and (3) that their actions amounted to gross negligence.**

Federal Rules of Civil Procedure, Rule 56(a) states a party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

The threshold inquiry on a motion for summary judgment revolved around whether any genuine factual issues existed which could have been resolved in favor of either party, the Court held that the determination of whether a given factual dispute required submission to a jury had to be guided by the same substantive evidentiary standards that applied to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d  202, 1986 U. S. LEXIS 115, 54 U.S.L.W. 4755, 4 Fed. R. Serv, 3d (Callaghan) 1041, 12 Media L. Rep. 2297 (U.S. 1986).

In *Anderson v. Liberty Lobby, Inc.,* the court required a clear and convincing standard for the underlying case.  The court continued by reasoning that the credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge, whether he is ruling on motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

In the case at hand, the U. S. Trustee's Motion for Summary Judgment was not heard by a jury nor was the evidence at the hearing supportive of granting a Motion for Summary Judgment.  There is no Affidavit in support of the Complaint nor is there an Affidavit in support of the Motion for Summary Judgment.  At the hearing, the U. S. Trustee did not present any evidence to the Court as to why its Motion for Summary Judgment should be granted.  It is true the docket reflects an Order for Contempt, however, it is also true that the Order was appealed, which signals a material dispute as to the facts of the case, which included appeals and motions to reconsider as well as a Motion to Recuse and a Motion to Remove demonstrates that the Appellant has a genuine dispute as to the facts of this case, not to mention the continued appearance of bias where the U. S. Trustee that is litigating this case is a personal friend of the Bankruptcy Judge.

Federal Rules of Civil Procedure, Rule 56(c)(1) states that a party assertion that a fact cannot be or is genuinely disputed must support the assertion by:

> (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

> (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Here, the Appellee did not cite a particular part of the record, including depositions, documents electronically stored information, affidavits or declarations,

stipulations, admission, interrogatory answers or other materials.  In fact, materials cited do not establish the absence of a genuine dispute which is required.

(2) *Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *No Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

In the case of *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538, 1986 U.S. LEXIS 38, 54 U.S.L.W. 4319, 1986-1 Trade Cas. (CCH) P67,004, 4 Fed. R. Serv. 3d (Callaghan) 368 (U.S. 1986), the court stated that when a moving party has carried its burden under Fed.R.Civ.P. 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *DeLuca v. Atlantic Refining Co.*, 176 F.2d 421, 423 (CA2 1949) (L. Hand, J.), cert. denied, 338 U.S. 943 (1950); 10A C. Wright, A. Miller, & M. Kane, **Federal** Practice and **Procedure** § 2727 (1983); Clark, Special Problems [*587] in Drafting and Interpreting Procedural Codes and **Rules**, 3 Vand. L. Rev. 493, 504-505 (1950). *Cf. Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944).

However, in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, the Appeals Court found that the District Court's summary judgment decision was improper. The court

acknowledged that "there are legal limitations upon the inferences which may be drawn from circumstantial evidence," but it found that "the legal problem . . . is different" when "there is direct evidence of concert of action." Here, the court concluded, "there is both direct evidence of certain kinds of concert of action and circumstantial evidence having some tendency to suggest that other kinds of concert of action may have occurred." The court turned to the evidence.

### EVIDENCE RELIED UPON BY APPELLANT TO PROVE THAT THERE WAS A GENUINE DISPUTE AS TO THE MATERIAL FACT

The fundamental question raised in this appeal is what is the duty of the judiciary, including the United States Bankruptcy Court, when faced with mortgage and bankruptcy fraud? When corruption is allowed to exist in the judiciary, not only is the basic right to equality before the law denied, procedural rights guaranteed by the United States Constitution are overlooked and neither justice nor equality prevails. "Fraud upon the court" makes void the orders and judgments of that court.

This Appellant has argued that she has been treated in a Discriminatory and Bias manner and denied the access to the Bankruptcy Code, while she has been stripped of real and personal property that benefited the Chapter 7 Trustee, his law partner and his law firm. Also, the Appellant has argued that U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 does not have standing to appear before any court as a creditor of this Appellant. And, the Patapsco Bank, a.k.a. Howard Bank mortgage had not matured as stated in their Motion for Relief.

The Appellant has argued that the rulings of the Bankruptcy Judge James F. Schneider has had a cooling effect on the Debtor and her ability to participate in the bankruptcy proceedings. These rulings have also violated the Debtors' protections under the Fifth and Fourteen Amendments of the United States Constitution as well as the protections provided under the Maryland Declaration of Rights.

**The Appellant has questioned whether an Order and/or Ruling by a Court be Valid if it was based on information that is fraudulent, omitted, purposely misrepresented, when the party's purpose is to benefit financially from the outcome of the Order of the Court?**

In this case at hand, the Appellant filed a Chapter 11 case in the United States District Court for Maryland in Baltimore on February 17, 2009 with a case number 09-12469. The Appellant was represented by Counsel and the case was confirmed on March 16, 2011. The Appellant sought a dismissal and a secured creditor sought a conversion.

## ISSUE 1 – NO BENEFIT TO CONVERT BANKRUPTCY CASE

Disagreement between the United States Bankruptcy Court when the Honorable Stephen Derby was faced with the same question as the Bankruptcy Judge James F. Schneider, the Honorable Stephen Derby disallowed a conversion. Here, only the Chapter 7 Trustee benefited from conversion.

## ISSUE TWO – REFUSAL TO REVIEW PLAN CONFIRMATION IN PRIOR BANKRUPTCY CASE TO DETERMINE TREATMENT OF CREDITOR

Howard Bank f.k.a. the Patapsco Bank argued that their loan had matured in April 2015, when it had not, hence, the Motion to Convert from Chapter 11 to a Chapter 7. As proof of her statements, the Appellant stated that when the prior Chapter 11 Bankruptcy was confirmed on March 21, 2011, the disclosure stated contained the following language, where the ending date of the four years should have been March 30, 2015 instead of March 30, 2014, which equals the specified four (4) years plus the additional one year. The language was copied over and included in the Order which stated the following on 367 Main Street:

3.6.1. The Class 6 Allowed Secured Claim and lien shall be modified to a new principal balance of Four Hundred Thirty Thousand Three Hundred Twenty-Nine Dollars and Fifty-two Cents  .  .  . beginning April 1, 2011, with a fifteen-day grace period for all payments and no pre-payment penalty or fee and with a balloon payment of the then unpaid balance in four (4) years on March 30, 2014  .  .  . the Debtor shall be provided with the right to extend the term of this modified loan for an additional one (1) year period through and including April 1, 2015 (the "Extension Right") without the payment of any extension fee.

The same problem occurred on the property located at 511 Main Street.  The disclosure stated contained the following language, where the ending date of the four years should have been March 30, 2015 instead of March 30, 2014, which equals the specified four (4) years:

3.7.1. The Class 7 Allowed Secured Claim and lien shall be modified to a new principal balance of Four Hundred Nineteen Thousand Seven Hundred Ten Dollars and Forty-four Cents ($419,710.44)  .  .  . beginning April 1, 2011, with a fifteen-day grace period for all payments and no pre-payment penalty or fee and with a balloon payment of the then unpaid balance in four (4) years on March 30, 2014  .  .  . the Debtor shall be provided with the right to extend the term of this modified loan for an additional one (1) year period through and including April 1, 2015 (the "Extension Right") without the payment of any extension fee.

| YEAR I | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 |
|---|---|---|---|---|
| APR 2011 | APRIL 2012 | APRIL 2013 | APRIL 2014 | APRIL 2015 |
| MAY 2011 | MAY 2012 | MAY 2013 | MAY 2014 | MAY  2015 |
| JUNE 2011 | JUNE 2012 | JUNE 2013 | JUNE 2014 | JUNE 2015 |
| JULY 2011 | JULY 2012 | JULY 2013 | JULY 2014 | JULY 2015 |
| AUG 2011 | AUG 2012 | AUG 2013 | AUG 2014 | AUG 2015 |

| SEPT 2011 | SEPT 2012 | SEPT 2013 | SEPT 2014 | SEPT 2015 |
|-----------|-----------|-----------|-----------|-----------|
| OCT 2011 | OCT 2012 | OCT 2013 | OCT 2014 | OCT 2015 |
| NOV 2011 | NOV 2012 | NOV 2013 | NOV 2014 | NOV 2015 |
| DEC 2011 | DEC 2012 | DEC 2013 | DEC 2014 | DEC 2015 |
| JAN 2012 | JAN 2013 | JAN 2014 | JAN 2015 | JAN 2016 |
| FEB 2012 | FEB 2013 | FEB 2014 | FEB 2015 | FEB 2016 |
| MAR 2012 | MAR 2013 | MAR 2014 | MAR 2015 | MAR 2016 |

## ISSUE THREE – REFUSAL TO REVIEW EMAIL TO DETERMINE MEANING OF LANGUAGE AS TO 4 + 1 IN CONFIRMED PLAN

The Appellant provided additional proof of intent in confirmed plan. The Appellant is in receipt of emails from her legal counsel, Marc R. Kivitz, and the legal counsel for the Howard Bank f/k/a the Patapsco Bank, Robert Glushakow, which supports her statements.

A. The Debtor relies on the email dated Thursday, September 23, 2010 from the Debtor's Attorney, Marc R. Kivitz to the Debtor concerning The Patapsco Bank. He states, "Rob Glushakow just called me to tell me that he has not had a chance yet to read my letter  .  .  . He wanted to let me know that he is not ignoring us. . . I gave him the "thumbnail" sketch of our proposal.  .  . **(Because you will probably remain in a Chapter 11 for 5 years and we would need time after your discharge to refinance even though we will continue to do that .  .  ."**

B. The Debtor received an email dated Tuesday, November 2, 2010 from the Debtor's Attorney, Marc R. Kivitz concerning The Patapsco Bank. The subject line states, "**Patapsco agrees to 4 + 1.**" It continues by stating "Rob Glushakow will be sending an email to confirm this."

26

C. On November 2, 2010, the Debtor's Attorney, Marc R. Kivitz states, "I will have to prepare an Amended Plan containing all of the agreed terms with Patapsco.  This may take an hour or so."

D. The interactions between the parties are based on a mutual understanding that an agreement has been reached.  On December 2, 2010, Robert Glushakow emailed to Marc Kivitz an email stating, "Hope all is well.  According to my diary, a Third Amended Disclosure Statement has to have been forward yesterday."

E. The actions that the parties took reflect a meeting of the minds.  On Wednesday, February 2, 2015, Marc Kivitz wrote to the Debtor, "We have received 2 Ballots from Patapsco Bank - both accepting as impaired classes."

F. On March 6, 2011, Robert S. Glushakow gave Marc R. Kivitz, his Opposing Counsel, permission to speak on his behalf at the confirmation hearing, which suggests that not only was there an agreement, but Robert S. Glushakow trusted Marc R. Kivitz to convey the meaning of the agreement, if necessary.

G. Robert S. Glushakow sent the modification documents to Marc R. Kivitz on June 30, 2011 and stated that the enclosed documents are for the modification which contains the terms that was previously agreed to and included in the confirmed Disclosure Statement.

H.  The modification documents were forwarded to the Debtor, this Debtor, by Marc R. Kivitz with the email from Robert S. Glushakow.  These documents represented as both Marc R. Kivitz and Robert S. Glushakow would state a "4 + 1 Term" which equals a total of five years.

## ISSUE FOUR – U. S. BANK, NA, AS INDENTURED TRUSTEE DID NOT HAVE STANDING IN THE UNITED STATES BANKRUPTCY COURT

Prior to the filing of the second bankruptcy, the Appellant was involved in civil litigation with U. S. Bank, NA, as Indentured Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3.

## A.  SEC FILING

However, on January 5, 2015, Sutherland Asset Management Corp., filed its S/11-A filing which contained a list of all of the subsidiaries, which included Waterfall Victoria Mortgage Trust 2011 SBC3. The S/11-A filing contained audits and certifications that the information contained was true and accurate by financial experts as well as various board members.  It stated the following:

(i)    The S/11-A filing stated that Waterfall Victoria Mortgage Trust 2011 SBC3 has a zero balance.

(ii)   The S/11-A filing stated that Waterfall Victoria Mortgage Trust 2011 SBC3 was completed in 2011. This was two years prior to the transfer from Waterfall Victoria Master Fund, Ltd to U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust, 2011 SBC3.

28

     (iii)    The S/11-A filing stated that the Trust, when it did hold property, never had ownership interest in any properties in the entire state of Maryland.

## B. "BACK-DATED" ASSIGNMENTS

Also, the documents before the court included Back-Dated *Assignment of Deed of Trust and Security Agreement* from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 were **backdated** by more than **two years**. It was filed by the Creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 as Dkt. 341-2, Page 7 of 9, Filed 1/31/14.  It states:

**"IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Deed of Trust and Security Agreement as of this 11th day of December, 2013 to be effective as of October 19, 2011."**

The *Assignment of Interests in Assignment of Leases and Rents* from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 was **backdated** by more than **two years**. It was filed by the Creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 as Dkt. 341-2, Page 9 of 9, Filed 1/31/14.  It states:

**"IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Deed of Trust and Security Agreement as of this 11th day of December, 2013 to be effective as of October 19, 2011."**

The *Assignment of Indorsement of Deed of Trust* Note from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 was **backdated** by more than **two years**. It was filed by the Creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 states the following:

"IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Indorsement of the Deed of Trust Note as of this 11[th] day of December, 2013 to be effective as of October 19, 2011."

### C. ASSIGNMENTS DO NOT CONTAIN ANY CONNECTION TO THE MORTAGEE OF RECORD

In the Maryland Land Records, a Deed of Appointment took place on September 29, 2008, which stated that "Capital One Bank as Successor by Merger from Greenpoint Mortgage Funding, Inc." had the authority to enter into conveyances. On March 16, 2011, Capital One Bank as Successor by Merger from Greenpoint Mortgage Funding, Inc. entered their representative's appearance. Yet, the documents relied upon by U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 to prove ownership of the debt in the Bankruptcy Court does not contain an endorsement by Capital One Bank nor Lehman Brothers.

### D. MISSING ENDORSEMENTS

In the Appellant's case, the Mortgage Note does not contain an endorsement reflecting ownership by other entities. There was no endorsement from Lehman Brothers, who held its ownership interest of the debt which is evidenced by tax returns. There is no endorsement from Countrywide which is evidenced by introduction letter. Nor is there an endorsement from Capital One Bank as Successor by Merger.

### E. MISSING TAXPAYER IDENTIFICATION NUMBER WITH THE IRS

Waterfall Victoria Mortgage Trust 2011 SBC3 does not have a taxpayer identification number which demonstrates that it is a separate entity or an entity that is in good standing with the Internal Revenue Service.

F.  **MISSING POOLING AND SERVICING AGREEMENT**

Securitization Trusts are governed by a "Pooling and Servicing Agreement."  In this case, the Waterfall Victoria Mortgage Trust 2011 SBC3 does not have a "Pooling and Servicing Agreement."

G.  **AFFIDAVIT BY INDIVUAL WITH SPECIALIZED KNOWLEDGE AND EXHIBITS**

Ms. Paula Rush, an individual with extensive knowledge and background, who have testified in the United States District Court on numerous occasions, prepared an affidavit which stated that the documents as submitted by the Indenture Trustee, Waterfall Victoria Mortgage Fund 2011 SBC3 was fraudulent.  Her Affidavit was accompanied by several exhibits which supported her opinion.

H.  **NEW YORK STATE DEPARTMENT OF CORPORATIONS**

The New York State Department of Corporations stated that Waterfall Victoria Master Fund, Ltd, did not register its name until September 15, 2011, which was three months after the assignments transferring the note and the deed of trust from Greenpoint Mortgage Funding, Inc.

**ISSUE FIVE - TRUSTEE VIOLATED 11 U. S.C. SECTION 558 BY LIMITING DEBTOR'S DEFENSES**

Title 11 of the United States Code section 558 states that the Bankruptcy Trustee may waive Debtor's defenses on behalf of the estate, but may not waive them in any manner that purports to limit Debtor's right to assert such defenses that are personal in nature.  In the case of Arlene A. Smith-Scott vs. U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust, 2011 SBC3, the Trustee filed a motion to intervene,

entered into settlements and sold real property for a reduced amount.  Hence, limiting the Debtor's Defenses.

In the case of Arlene A. Smith-Scott vs. the Patapsco Bank, which occurred nine months after the bankruptcy five and five months after conversion from a Chapter 11 to Chapter 7 , and weeks after the bad act by the Creditor, the Trustee entered their Motion to Intervene stating that they were the "real party of interest."  The Trustee filed a Stipulation of Dismissal with Prejudice, which stated, "Hereby Dismiss with Prejudice this Lawsuit in its Entirety, Including All Claims and Counterclaims."  The agreement did not guarantee any result to the unsecured creditors because it allowed, "Howard Bank f.k.a. the Patapsco Bank, reserves the right to approve and/or veto any sale of each of the Real Properties."

Bankruptcy statute providing that "estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses."
11 U. S. C. Section 558.


## ISSUE SIX  -  NEGLIGENT AND WILLFUL MISREPRESENTATIONS BY CHAPTER 7 TRUSTEE WITH OUTCOME OF THREATENED INCARCERATION

The Chapter 7 Trustee and their legal representative testified at the hearing on May 16, 2016, before the Honorable James F. Schneider and the United States Trustee, stating that the Appellant, through the use of Intimidation and Harassment, turned the electricity off in the residential units located at 369 Main Street, Laurel, Maryland 20707.

The Chapter 7 Trustee, stated, "And it was reported to us that Ms. Smith-Scott shut off the electricity. And so the bank has had a new electricity account opened so that those tenants -- the problem wasn't the payment of the electricity, the problem was that the tenants would be so intimidated that they would leave."

This statement was untrue.  The Appellant is the attorney for one of the tenants that she was accused of intimidating and her representation ended in December, 2016,

months after the Chapter 7 Trustee statements.   The second tenant has been and continues to be in contact with the Appellant. This Tenant testified in the District Court for Maryland that the Secured Creditor and its agents purposely turned off the water as well as the electricity in order to force both of the tenants to leave.

As previously stated by the Appellant, the Bank's management company began to manage the properties on or about September, 2015, which included being responsible for the expenses and liabilities on the premises.

The Chapter 7 Trustee knew or should have known that statement was false and it would cause the Honorable Judge James F. Schneider to have an adverse reaction to the Appellant.

In response to the statements made by the Chapter 7 Trustee, the Honorable James F. Schneider, ordered, "Do you understand that you are going to be asked, not asked, told to vacate the premises? And that if you don't do that, you're going to be subject to sanctions, and those sanctions might include incarceration. Do you understand that?"

## ISSUE SEVEN -  DENIED THE RIGHT TO BUYOUT ESTATE

This Appellant offered to buy-out her estate or those non-exempt assets with post petition funds.  However, the Appellant was refused this request with the argument that because this was a second bankruptcy filing that she was not eligible to buy out her estate.  However, the Appellant has represented Mr. Tyrone Hines in a Chapter 7 Bankruptcy Case with case number 15-12263, who has had more than one bankruptcy filing; yet, he was allowed to buy out his estate under the Appellants's legal representation.

In a separate case, Ngozi Patience Madukwe, who has filed five (5) Chapter 13 Bankruptcies as a Pro Se Debtor, allowed the Appellant to represent her and she was allowed to buy out her estate, which is evident by the offer made by the Chapter 7 Trustee.

In the Appellant's case, the Howard Bank had two separate mortgages that were

paid and the Bank argued that the loan had matured, which means that the Appellant had made the payments.

There is no such rule that prevents an individual from buying out their estate and the Trustee misrepresented Title 11 of the United States Code.

### ISSUE EIGHT - VIOLATION OF TITLE 11 OF THE U. S. C. SECTION 544 BY TAKING MONIES AND PERSONAL PROPERSAL PROPETY BELONGING TO ENTITY THAT IS NOT PARTY TO THE BANKRUPTCY ESTATE

Title 11 of the U. S. C. Section 544 prohibits Chapter 7 Trustees from asserting causes of action on behalf of creditors.  The Supreme Court in *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 434 (1972) stated that nowhere in the statute did that Court find any provision enabling the trustee "to collect money not owed to the estate."

In our case, the Chapter 7 Trustee stated the following:

"Strategic Law Group, LLC has failed to pay to Howard Bank in derogation and defiance of Howard Bank's assignment of rents rights, has thereby occupied 367 Main Street, Laurel (the "Real Property") without paying rent for more than a year, is thereby occupying to the detriment of the bankruptcy estate and the detriment of the secured party, Howard Bank . . ."

Then the Chapter 7 Trustee, without authorization from the Court, took monies from the business, Strategic Law Group, LLC, bank account, which contained monies for Strategic Law Group, LLC, but also for several of their clients.  Later, the Chapter 7 Trustee stated that Strategic Law Group, LLC, as separate entity with its own taxpayer identification number, owed rent to the estate, which was not true.

The Secured Lender had an Assignment of Rents and was responsible for managing the property and collecting rents.  By taking the funds in the bank account for Strategic Law Group, LLC, not only did the Chapter 7 Trustee perjure himself but he

also violated Section 544 of Title 11 by acting on behalf of Howard Bank.

## ISSUE NINE  - DENIAL OF THE RIGHT TO PARTICIPATE IN HEARING ON SELL OF APPELLANT'S REAL PROPERTY

11 U.S.C.S. § 502(a) allows a "party in interest" to challenge claims made against the estate. In the bankruptcy context a party in interest is one who has a pecuniary interest in the distribution of assets to creditors.

On November 5, 2015, a hearing took place on the Chapter 7 Trustee's Motion to Sell Real Property located at 10 Stanley Drive, Catonsville, Maryland 21228.  The Chapter 7 Trustee, the Appellant and the Appellant's Witness, Paula Rush was present at the hearing.  The Attorney for U. S. Bank, NA, was present telephonically.  The Appellant was asked one question by Judge Schneider, which was if she had heard about a case of Main v. Kivitz, in which the Judge Schneider, meant, Williemain v. Kivitz, 764 F.2d 1019, 1022 (4th Cir. 1985). The Appellant made the following answer:

"MS. SMITH-SCOTT:   Actually, in fact, I have a copy of it. And the reason why I'm here today, Your Honor, is because I don't agree that I do not have standing. First of all, fraud may be revised at any time. But the reason why I'm here is because I have a pecuniary interest in the outcome of the Trustee's Motion to Sell. The reason being, and if you go to Williemain v. Kivitz, 764 F.2d 1019(4th Cir. 1985), the basis of it is that there's a surplus that will be returned to the debtor. The Debtor is entitled and has a pecuniary interest.  And the reason why I am bringing this us is because U. S. Bank, NA as Indentured Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3, by their own parent company, does not exist. The Trust that they're relying on does not, was completed in 2011. And in fact before it was completed, there were no liens, no property held, and no loans, nothing to tie them to the State of Maryland as to property holdings.

35

Now I have the SEC filing and I was going to bring my fact witness later, but I have the actual document that Sutherland submitted to the United States Securities And Exchange Commission after my filing in the District Court, after my bankruptcy filing."

THE COURT: So why do you have an interest?

MS. SMITH-SCOTT: I would have an interest because if U.S. Bank as indentured trustee for Waterfall Victoria Mortgage Trustee 2011-SBC3 is found to be guilty or is found to be non- existent, therefore what proceeds that the Trustee has entered into will not be for their benefit. It will not be for them."

The Court stated the following to the Debtor after it made its Order;
**"And the issues that you're raising as Mr. Shively says mostly are hypothetical. There's no basis for any of your arguments."**

In other courtrooms across the United States, the courts have determined the reliance upon SEC filings as being acceptable and valid. In *Zak v. Chelsea Therapeutics International, Ltd,* No. 13-2370 (4th Cir. March 16, 2015), the plaintiffs brought securities fraud claims against Chelsea Therapeutics based on its statements and omissions concerning the likelihood of FDA approval for its new drug, Northera. In that case, the Court of Appeals in the Fourth Circuit, explained that on a motion to dismiss, documents outside the complaint may generally only be considered when those documents are integral to and explicitly relief upon in the complaint and the plaintiffs do not challenge their authenticity.

In the bankruptcy case, not only was Appellant not allowed to participate further, but her witness was not allowed to participate nor was she allowed to submit the SEC filings which speaks for themselves. In fact, the Bankruptcy Judge implied that the mere fact that an Attorney was on the telephone, it was proof of the business existence.

Where it appears that, if contested claims are disallowed, there will be a surplus, Appellant has pecuniary interest in distribution of estate assets and, thus, has standing to object to claims or orders relating to them. *In re Kieffer-Mickes, Inc.*, 226 B.R. 204, 42 Fed. R. Serv. 3d 5 (B.A.P. 8th Cir. 1998). Even when there is no possibility of any surplus after payment of creditor claims, Chapter 7 debtors will still have standing to object to bankruptcy claim, if claim in question is not dischargeable in Chapter 7; in that case, Appellant would have requisite pecuniary interest in allowance or disallowance of claims. *In re Toms*, 229 B.R. 646 (Bankr. E.D. Pa. 1999).

**III.    Whether the United States Bankruptcy Court abused its discretion when it entered an Order for Summary Judgment after allegations of misconduct and/or an abuse of process by the Chapter 7 Trustee, including perjury and self-dealing, which is evidenced in the Docket as well as the Complaint in the United States District Court for Maryland.**

The Chapter 7 Trustee and his counsel are fiduciaries of the bankruptcy estate. They are not at liberty to make side deals with other parties to increase their compensation. At best, these arrangements distract the trustee from his primary duties. At worst, they create actual conflicts of interest when the trustee sees he can make more money for himself by liquidating collateral for a secured creditor than he can by asserting a claim against the secured creditor on behalf of the estate. *In Re Preston Lumber Corp.*, 199 B.R. 415 (Bankr. N.D. Cal. 1996).

The prohibition against the sale of fully encumbered property is embedded in the official Handbook for Chapter 7 Trustees in several places:

> "Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interests in the collateral subject to the security interest."

U.S. DOJ Exec. Office for U.S. Trs., Handbook for Chapter 7 Trustees at 4– 16 (2012) (hereinafter, Handbook). The Handbook also provides:

> "A chapter 7 case must be administered to maximize and expedite dividends to creditors. A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case." 28 U.S.C. § 586.

In the case of *In Re Preston Lumber Corp.*, 199 B.R. 415 (Bankr. N.D. Cal. 1996), the secured creditor, Sumitomo Bank and the debtor's industrial lessor had a dispute as to the priority of their lien rights in fully encumbered sawmill equipment and rolling stock. Sumitomo convinced the chapter 7 trustee to sell the assets free and clear of liens, in exchange for a pre-fixed commission for the trustee and $35,000 fee for the trustee's attorney. The bankruptcy court found the arrangement "highly improper" on the grounds that (1) there was no resulting benefit to the estate and (2) the trustee and his counsel were motivated by personal gain.

In the case of *In Re Pauline*, 119 B.R. 727 (9th Cir. BAP 1990), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 3, 1989. At the time of the filing, the encumbrances on the Debtor's home, including IRS tax liens and the Debtor's homestead exemption, totaled more than the petition-date value of the home. Six-months later, Appellant Carey determined that the Debtor's home should be abandoned. In a letter to a creditor of the Debtor dated August 23, 1990, Appellant Carey memorialized this determination by stating in the letter that he was "abandoning his trustee interest in the home." Notwithstanding his stated intention to abandon the home,

Appellant Carey later reversed himself and decided to sell the home. When the Debtor found out that Appellant Carey intended to sell the home, the Debtor filed a motion urging the bankruptcy court to order the abandonment of the home.  The Court stated that because the Debtor's homestead exemption is final with respect to the Trustee and because the Trustee has apparently engaged in a course of conduct designed to enhance the size of his bank account rather than the size of the funds available for the Debtor's unsecured creditors, they declined to overturn the bankruptcy court's decision.  On appeal, the Panel affirmed the bankruptcy court's decision in part, because (1) the IRS did not ask the trustee to sell the property for the IRS' benefit, and (2) the trustee apparently had "engaged in . . . conduct designed to enhance the size of his bank account rather than the size of the funds available for the debtor's unsecured creditors . . . ."

In the case at hand, the Chapter 7 Trustee filed a motion to hire his law firm at a rate equivalent to Three Hundred and Seventy Five Dollars per Hour, ($375.00).  In the stipulation agreement with U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3, the Chapter 7 Trustee agreed to receive Twenty-Five Thousand Dollars, $25,000.00.  In the stipulation agreement with Howard Bank, the Chapter 7 Trustee agreed to receive Ten Thousand Dollars, $10,000.00 for each property.

On January 5, 2017, at Docket 445, the Chapter 7 Trustee, George Liebmann, filed "TRUSTEE'S FIRST INTERIM APPLICATION FOR APPROVAL OF ATTORNEY'S FEES."  The Application for Fees stated the Following:

"4. The legal services rendered for the benefit of the bankruptcy estate consist of 44.5 hours by Orbie R. Shively at his 2015 billing rate of $380/hr., having a value of $16,910.00 (44.5 hr. x $380/hr. = $16,910.00); and 66.7 hr. by Orbie R. Shively at his 2016 billing rate of $400/hr., having a value of $26,680.00 (66.7 hr. x $400/hr. = $26,680.00); and 3,5 hr. by Orbie R. Shively at his 2017 billing rate of $420/hr. (3.5 hr. x $420/hr. = $1,470.00). These services therefore have a total value of $45,060.00 against which the Trustee has decided to apply a $7,060.00 courtesy

discount, summarized as follows: Summary ORS 2015 44.5 hr. x $380/hr.
= $16,910.00 Blended hourly rate = $331.30 ORS 2016 66.7 hr. x $400/hr.
= $26,680.00 ($36,000 divided by 114.7 hr.) ORS 2017 3.5 hr. x $420/hr. =
$ 1,470.00 114.7 hr. $45,060.00 Less: courtesy discount (7,060.00)
$38,000.00

5. The Trustee has applied billing judgment to the application, excluding
8.6 hours of the time of George W. Liebmann and 28.2 hours of the time of
Orbie R. Shively. The Trustee has decided to apply a $7,060.00 courtesy
discount."

As the above document is the First Interim, it is assumed that there would be more
fee applications by this Chapter 7 Trustee, it appears that the Trustee apparently had
"engaged in . . . conduct designed to enhance the size of his bank account rather than the
size of the funds available for the debtor's unsecured creditors . . . ."

In this case, the arrangements made by the Chapter 7 Trustee have led to
improper activity. On April 12, 2016, the Chapter 7 Trustee entered the premises
of a third party entity, Strategic Law Group, LLC. This entity is owned by the
Appellant and it occupies one of the commercial spaces at 367 Main Street,
Laurel, Maryland 20707. The Chapter 7 Trustee, attempting to evict this tenant,
received an order stating that it must move without eight (8) days stating that the
entity was not in good standing. The attorney for the Chapter 7 Trustee, who is his
law partner, Orbie Shively, entered the premises with a locksmith. As staff arrived
began interrogating them and intimidating them in an effort to get them to leave.
Then he left, leaving the doors unable to lock.

Two months later, the attorney for the Chapter 7 Trustee and his law
partner, Orbie Shively, garnished the bank accounts of Strategic Law Group, LLC
including monies belonging to individual clients. This action was after receiving
proof that the entity was in good standing.

40

These actions have all taken place after Howard Bank received an order to lift stay. These actions have taken place with the knowledge that the both properties are severely underwater, with the indebtedness on one being equal to Four Hundred and Nineteen Thousand Dollars with a value of approximately Three Hundred Thousand Dollars and the other having very similar numbers.

**IV.    Whether the United States Bankruptcy Court erred by granting the Motion for Summary Judgment when the Appellant's Constitutional Rights in the Fifth and Fourteenth Amendment to the United States which states that "no state shall deny to any person within its jurisdiction "the equal protection of the laws" has been violated.**

The Equal Protection Clause is part of the Fourteenth Amendment to the United States Constitution. The clause, which took effect in 1868, provides that no state shall deny to any person within its jurisdiction "the equal protection of the laws" The Fifth Amendment does not contain an equal protection clause as does the Fourteenth Amendment which applies only to the states. But the concepts of equal protection and due process, both stemming from the American ideal of fairness, are not mutually exclusive. The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore, the Supreme Court of the United States does not imply that the two are always interchangeable phrases. But discrimination may be so unjustifiable as to be violative of due process. *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693, 98 L. Ed. 884, 1954 U.S. LEXIS 2095, 53 Ohio Op. 331 (U.S. 1954).

Maryland Constitution, Declaration of Rights, Article 24, states, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land.

The court utilizes a "two-part approach" to determining whether the alleged constitutional deprivations could be attributed to the state: First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of

41

conduct imposed by the state or by a person for whom the state is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

Strict Scrutiny requires that the government must show that the challenged classification serves a compelling state interest and that the classification is necessary to serve the interest:

A. Suspect Classification

1. Race
2. National Origin
3. Religion
4. Alienage

B. Classifications Burdening Fundamental Rights

1. Denial or Dilution of the Vote
2. Interstate Migration
3. Access to the Courts
4. Other Rights Recognized as Fundamental

In 42 U.S. Code § 1983 - Civil action for deprivation of rights, states, "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be

42

granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

In the case at hand, the Appellant is an African American Woman who has filed as a pro se litigant. She strongly believed that she was discriminated against by the Bankruptcy Court. First, the Debtor believes that the United States Bankruptcy Judge James F. Schneider has violated Title 28 of the United State Code, Section 455 by being partial and biased in the Debtor's Bankruptcy case for several reasons:

a. First, it appears that Judge Schneider does not believe that attorneys should be able to utilize the bankruptcy code to seek relief from overwhelming debt, which is also reflected *In re Jacob Fraidin*, Case No. 92-52338-JS, Adv. Proc. 06-1795-JS; 401 B.R. 725(2008).

b. Second, the Debtor argues that Judge Schneider has a personal bias against this Debtor due to her past performance in his court room.

c. Third, the Debtor argues that Judge Schneider appears to be biased against this Debtor because she is a minority woman who is managing real property, which he may believe is beyond her talent.

This invidious discrimination prevented the plaintiff from fully and fairly participating as a party at the hearing. The discriminatory nature of the proceedings had a cooling effect on the proceedings and it prevented the Appellant from being able to use various rules of law that were applicable to this case. For example, the Appellant was denied the use of the following:

### Uniform Commercial Code

A similarly situated individual would have been able to use the Uniform Commercial Code, Article 9, to demonstrate that the secured creditor on 10 Stanley Drive, Catonsville, Maryland 21228 did not have standing in the bankruptcy proceeding nor were they entitled to enforce defective assignments.

### Dodd –Frank Wall Street Reform and Consumer Protection Act

A similarly situated individual would have been able to rely on The Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U. S. C. Section 5301, while applying for a loan modification with the secured creditor.  The Dodd-Frank Act is "to assure that consumers are offered and receive residential mortgage loans on terms that reasonably reflect their ability to repay the loans and that are understandable and not unfair, deceptive or abusive."  However, the Appellant, with 511 Main Street, which is 75% residential and 367 Main Street, which is 50% residential, cannot participate in the proceedings.

### Home Affordable Modification Program and Waterfall Programs

The Home Affordable Modification Program (HAMP), 12 U. S. C. Section 5219, is designed to help financially struggling homeowners avoid foreclosure by modifying loans to a level that is affordable for borrowers now and sustainable over the long term. The program provides clear and consistent loan modification guidelines that the entire mortgage industry can use.

### Truth and Lending Act

A similarly situated individual would have been able to rely upon the Truth and Lending Act to demand an accurate accounting, but not this Appellant. This Appellant was denied the use of the Truth and Lending Act, Regulation Z, 12 CPR Part 226, which protects other citizens, not this Appellant, from inaccurate and unfair credit billing and credit card practices. For loans covered under TILA, you have a right of rescission, which

allows you three days to reconsider your decision and back out of the loan process without losing any money. This right helps protect you against high-pressure sales tactics used by unscrupulous lenders.

### Maryland Code, Real Property, Section 7 and Section 14

A similarly situated individual would have been able to rely on the foreclosure laws, specifically, Maryland Code, Section 14-211, to raise the defenses and counterclaim to the highest courts in the State, however, this Appellant was denied the right to do so.

V.     **Whether the statements by the Judge James F. Schneider, who joked to the U. S. Trustee and the Chapter 7 Trustee about the Respondent/Debtor request to sit down due to her recent appendectomy as the Respondent/Debtor was leaving the courtroom, reflects the discrimination of this court.**

Judicial misconduct occurs when a judge acts in ways that are considered unethical or otherwise violate the judge's obligations of impartial conduct. The *Judicial Conduct and Disability Act of 1980*, 28 U.S.C. §§ 351-364 establishes a process by which any person can file a complaint alleging a federal judge has engaged in "conduct prejudicial to the effective and expeditious administration of the business of the courts" or has become, by reason of a mental or physical disability, "unable to discharge all the duties" of the judicial office.

Here, in this case, the Appellant has filed a Motion to Recuse in the past, however, she has not filed a complaint. Yet, at the hearing on January 16, 2017, the Appellant sought to sit down due to a recent surgery, which he allowed. However, while the Appellant was leaving, the Bankruptcy Judge, showing his disdain and bias, asked the Appellant how was she able to walk out of the courtroom, when she asked to be seated while participating in the hearing. The Bankruptcy Judge laughed with the U. S. Trustee as well as the attorney for the Chapter 7 Trustee.

45

## REASONABLE PERSON STANDARD

Would a reasonable person believed that the behavior of the Bankruptcy Judge was impartial?  Was the joke an inclusive statement by the judiciary or was it meant to bring ridicule to the Appellant and exclude her in the witnesses' eyes?  The Fourth Circuit has clarified that the hypothetical reasonable observer is not a judge because judges, keenly aware of the obligation to decide matters impartially, "may regard asserted conflicts to be more innocuous than an outsider would." *U.S. v. DeTemple*, 162 F.3d 279 (4th Cir. 1998).  However, an impartial person may see the damage this poorly told joke can do to undermine the position of the Appellant.

In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." *Liteky v. U.S.*, 114 S.Ct. 1147 (1994).

Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

## CONCLUSION

In Conclusion, this Appellant moves this Court for an order vacating the order granting summary judgment.  In order for the lower court to have ruled in favor of the summary judgment, it would have had to find that the evidence as purported by the Appellant that reflects (1) that the modified mortgage loan had not matured and (2) that

46

the Waterfall Victoria Mortgage Trust 2011 SBC3 had standing, in itself, was "fake news" which is an anthem heard in the circles of politics today.

Respectfully Submitted,


/s/  Arlene A. Smith-Scott, Pro Se
Arlene A. Smith-Scott
16701 Melford Blvd, Suite 400
Bowie, Maryland 20715
Tel:  240.280.2370
Fax: 240.366.5727
StrategicLaw1@gmail.com

**CERTIFICATE OF SERVICE**

I, Arlene A. Smith-Scott, hereby certify that I served a copy of the **APPELLANTS'**

**OPENING BRIEF** was served via first class mail and/or the Court's EM/ECF system on May 9,

2017 and through the United States Postal Service on September 9, 2017 to:

*__APPELLEE__*

Hugh M. Bernstein
Office of the U. S. Trustee
101 West Lombard Street
Suite 2625
Baltimore, Maryland 21201
Hugh.m.bernstein@usdoj.gov

/s/ Arlene A. Smith-Scott
Arlene A. Smith-Scott, Esq

## CERTIFICATE OF COMPLIANCE

This is to certify that the font used in this brief is Times New Roman, the size of the font is 13 and the spacing is one and a half space per line.  There are approximately 14,499 words at 48 pages.


/s/ Arlene A. Smith-Scott
Arlene A. Smith-Scott, Esq

x