IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARLENE A. SMITH-SCOTT
    *Appellant*,

v.                                            Civil Action No. ELH-17-267

U.S. TRUSTEE
    *Appellee*.

**MEMORANDUM OPINION**

This bankruptcy matter is before the Court on an appeal filed by Arlene A. Smith-Scott, the self-represented debtor, pursuant to 28 U.S.C. § 158. ECF 1 (Notice of Appeal); ECF 2 (Amended Notice of Appeal). Smith-Scott challenges three orders of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") issued in January and February 2017. These orders entered summary judgment and final judgment against Smith-Scott in an adversary proceeding filed by Judy A. Robbins, the United States Trustee ("U.S. Trustee") (ECF 1-1; ECF 2-3), resulting in an order denying Smith-Scott's discharge under 11 U.S.C. § 727(a)(6). ECF 2-2.

Both Smith-Scott, as appellant, and the U.S. Trustee, as appellee, designated voluminous portions of the record of the Bankruptcy Court proceedings as the record on appeal. *See* ECF 3 ("Appellee's Designation of Record on Appeal"); ECF 4 ("Appellant's Designation of Record on Appeal"). Several weeks later than ordered (*see* ECF 9), Smith-Scott filed "Appellant's Brief." ECF 10. It was not supported by an appendix, in contravention of Fed. R. Bankr. P. 8018(b)(1).[1]

---

[1] The Rule requires an appellant to "serve and file with its principal brief excerpts of the record as an appendix."

The U.S. Trustee filed "Appellee's Brief" (ECF 13), supported by a four-volume appendix ("UST App'x").[2] Appellant did not reply.

The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). I note, however, that although Smith-Scott is self-represented, she is an attorney and a member of the Maryland Bar. *See* UST App'x at 26.

No hearing is necessary to resolve the appeal. *See* Local Rule 105.6. For the reasons that follow, I shall affirm all three orders of the Bankruptcy Court.

## I. Factual and Procedural Background

Smith-Scott commenced Chapter 11 bankruptcy proceedings in September 2014. *See* Case JFS-14-25022;[3] UST App'x at 1, 8. At the time, she owned three investment properties in Maryland. *Id.* at 8. In early 2015, one of Smith-Scott's creditors, Patapsco Bank, filed a motion under 11 U.S.C. § 1112(b) to convert Smith-Scott's Chapter 11 bankruptcy to a Chapter 7 bankruptcy. UST App'x at 55-56. The Bankruptcy Court granted this motion (*id.*), and Smith-Scott appealed the conversion order. This Court affirmed the conversion. *Id.* at 642-56, 57; *see Smith-Scott v. Patapsco Bank*, RDB-15-1013, at ECF 10. Smith-Scott filed a motion to reconsider, which the Bankruptcy Court denied. *See id.* at 658-68. Thereafter, Smith-Scott appealed the denial of the motion to reconsider to this Court, which affirmed. *See id.* at 852-59,

---

[2] Volume I (pages 1 to 641) and Volume II (pages 642 to 1190) were not posted electronically, presumably due to their length. *See* ECF 13-1; ECF 13-2. Volume III (pages 1191 to 1364) and Volume IV (pages 1365 to 1684) are available on ECF. ECF 13-3; ECF 13-4. I shall cite to the pages of the UST App'x, rather than the electronic docket.

[3] At the relevant time, the case was assigned to Bankruptcy Judge James F. Schneider, who has since retired.

860-61; *see Smith-Scott v. Howard Bank*, RDB-15-3423, at ECF 15. Then, Smith-Scott appealed to the Fourth Circuit, which also affirmed. *See id.* at 1333-38; *see Smith-Scott v. Howard Bank et al.*, Case 16-1325, at ECF 40-2.

As part of the Chapter 7 bankruptcy, Smith-Scott was required to turn over the investment properties to the bankruptcy estate, pursuant to 11 U.S.C. § 541. The Chapter 7 trustee filed two motions to compel Smith-Scott to turn over the properties. *See* UST App'x at 59-66, 824-51. Both motions were granted. *See id.* at 67-69 ("First Turnover Order"); *id.* at 867-68 ("Second Turnover Order"). Smith-Scott moved for reconsideration of the Second Turnover Order, which required her to give possession of two of the investment properties to the Chapter 7 trustee. *See id.* at 867-68, 869-79. The Bankruptcy Court denied her motion. *Id.* at 1359-62.

It appears that Smith-Scott did not comply with the Second Turnover Order. As a result, the Chapter 7 trustee filed a motion for civil contempt. UST App'x at 881-88. The Bankruptcy Court found Smith-Scott in contempt, and ordered her to turn over the property and pay related fines and costs until she did. *Id.* at 1180-81. Smith-Scott appealed the contempt order (*id.* at 1185-86), and Judge Bennett of this Court affirmed. *Id.* at 1352-58; *see Smith-Scott v. Howard Bank et al.*, RDB-16-1572, at ECF 9.

Nevertheless, Smith-Scott did not comply with the Second Turnover Order, and the Bankruptcy Court ordered the U.S. Marshal to assist the Chapter 7 trustee in taking possession of the properties. *Id.* at 1329-30 ("U.S. Marshal Order"). In the U.S. Marshal Order, the Bankruptcy Court made a finding that Smith-Scott was "willfully disregarding court orders and refusing to allow the Trustee to undertake his statutory function to administer the assets of the estate." *Id.* Smith-Scott appealed the U.S. Marshal Order (*id.* at 1331), but the appeal was

dismissed for failure to prosecute. *Id.* at 1363-64; *see Smith-Scott v. Liebmann*, GLR-16-2658, at ECF 9.

Thereafter, Smith-Scott filed a motion under 11 U.S.C. § 324(a) to remove the Chapter 7 trustee, as well as a motion asking Judge Schneider of the Bankruptcy Court to recuse himself. *See* UST App'x at 673-98, 891-905. Both motions were denied. *Id.* at 1339-42, 1345-48, 1349-50. Smith-Scott appealed the denials, and Judge Russell of this Court affirmed in August 2017. *See Smith-Scott v. Liebmann*, GLR-16-3074, at ECF 8.

On June 20, 2016, the U.S. Trustee filed a Complaint to Deny or Revoke Discharge (the "Discharge Action"), under 11 U.S.C. § 727 and Rules 4004 and 7001(4) of the Federal Rules of Bankruptcy Procedure. *See U.S. Trustee v. Smith-Scott*, JFS-16-297; UST App'x at 1365-72. The Complaint alleged five independent bases to support the denial of a bankruptcy discharge. UST App'x at 1365-72. Count I, Count Three, and Count Four[4] alleged that Smith-Scott had refused to comply with a court order, under 11 U.S.C. § 727(a)(6). UST App'x at 1368-71. Of those, Counts Three and Four referred to Smith-Scott's failure to comply with the Turnover Orders. *Id.* at 1369-71. Counts 2 and Five alleged that Smith-Scott transferred or concealed property of the bankruptcy estate with the intent to hinder, delay, or defraud a creditor or the trustee, under 11 U.S.C. § 727(a)(2). UST App'x at 1368-69, 1371. On October 26, 2016, the U.S. Trustee filed a motion for summary judgment, reciting as support the facts underlying Counts Three and Four of the Complaint, i.e. Smith-Scott's failure to comply with the Turnover Orders. *Id.* at 1374-77.

On January 19, 2017, the Bankruptcy Court held a hearing on the motion for summary judgment. *See* UST App'x at 1659-82. Smith-Scott had filed a response in opposition to the

---

[4] The counts in the Complaint are listed as Count I, Count 2, Count Three, Count Four, and Count Five.

motion, but only on the morning of the hearing. *See id.* at 1388-1400. At the hearing, Smith-Scott argued with Judge Schneider and left the courtroom before the close of the Bankruptcy Court's oral ruling. *See id.* at 1678. Neither Smith-Scott nor the U.S. Trustee presented any evidence or examined any witnesses. However, during the hearing, Smith-Scott stated: "I failed to follow the rules because I believe that I have the right to appeal. I had a right to [be] heard in another court." *Id.* at 1670.

The Bankruptcy Court found that Smith-Scott had not obeyed court orders (UST App'x at 1678), and had disobeyed willfully (*id.* at 1681), and granted summary judgment to the U.S. Trustee. *Id.* On January 23, 2017, the Bankruptcy Court entered a formal order granting the motion for summary judgment. *Id.* at 1648-49. On February 10, 2017, it entered a judgment denying Smith-Scott a discharge (*id.* at 1652-53) and an order certifying the judgment as final. *Id.* at 1654-55. Smith-Scott timely filed a notice of appeal as to the summary judgment order (*id.* at 1650), and amended it to add an appeal of the judgment denying a discharge and the order certifying the judgment as final. *Id.* at 1656-57. The appeal is now pending before this Court.

**II. Standard of Review**

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts"); *see also Conrad v. Schlossberg*, 555 B.R. 514, 515-16 (D. Md. 2016) (citing 28 U.S.C. § 158(c)(2)); *Craddock Washabaugh v. Miller*, No. 1:16-CV-694, 2016 WL 4574690, at *1 (M.D.N.C. Sept. 1, 2016) (same); *Engell v. Sheetz*, No. 2:16-CV-5-BR, 2016 WL 3579011, at *1 (E.D.N.C. June 24, 2016) (same). "On an appeal the district court or bankruptcy appellate panel may affirm,

modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings." *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985) (internal quotations omitted); *see also In re LightSquared, Inc.*, 534 B.R. 522, 525 (S.D.N.Y. 2015) (recognizing, *inter alia*, the district court's power to remand with instructions for further proceedings).

The district court reviews the bankruptcy judge's findings of fact under the "clear error" standard. *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *Mort Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013). A finding of fact is clearly erroneous when the record demonstrates convincingly to the reviewing court that "a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see, e.g.*, *Andrews v. America's Living Centers, LLC*, 827 F.3d 306, 312 (4th Cir. 2016); *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). And, the bankruptcy court's conclusions of law are subject to *de novo* review. *In re Taneja*, 743 F.3d at 429; *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).

Pursuant to Fed. R. Bankr. P. 7056, Rule 56 of the Federal Rules of Civil Procedure applies to adversary proceedings. Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary

judgment as a matter of law.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252.  And, "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24.  As indicated, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd.*, 475

U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

### III. Discussion

Section 727 of Title 11 of the United States Code provides, in relevant part:

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \*

(6) the debtor has refused, in the case—
(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify . . . .

In *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994), the Fourth Circuit explained:

[Section] 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of bankruptcy law, to give honest debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 19, (1970). However, certain provisions of § 727 prohibit discharge for those who "play fast and loose with their assets or with the reality of their affairs." *In re Tully,* 818 F.2d 106, 110 (1st Cir. 1987).

As to § 727(a)(6), the Fourth Circuit has said, *In re Jordan*, 521 F.3d 430, 433-34 (4th Cir. 2008) (internal quotation marks and citations omitted):

The term used in § 727(a)(6)(A) is 'refused' not 'failed.' Accordingly, the Court must find that the Debtors' lack of compliance with the relevant court order was willful and intentional. . . . The party objecting to discharge satisfies this burden by demonstrating the debtor received the order in question and failed to comply with its terms . . . . Such a showing then imposes upon the debtor an obligation to explain his non-compliance.

Smith-Scott challenges the grant of summary judgment to the U.S. Trustee on its Complaint to Deny Discharge on several grounds. First, she challenges the Bankruptcy Court's jurisdiction over the Discharge Action. ECF 4, ¶ 1. Second, she asserts that the Bankruptcy Court erred by entering summary judgment because the U.S. Trustee's allegations were not supported by the evidence. *Id.* ¶ 2. Third, she contends that the Bankruptcy Court abused its

8

discretion by granting summary judgment after "allegations of misconduct and/or abuse of process by the Chapter 7 Trustee." *Id.* ¶ 3. Fourth, she challenges the grant of summary judgment on what appear to be Fourteenth Amendment equal protection grounds, possibly concerning Smith-Scott's race or gender. *Id.* ¶ 4. Fifth, Smith-Scott asserts that the bankruptcy judge "joked" about her physical disability, caused by a recent appendectomy, which "reflects the discrimination of" the Bankruptcy Court. *Id.* ¶ 5.

As a threshold matter, it is worth repeating that three orders are the subject of the appeal: the Order Entering Summary Judgment Denying Discharge (ECF 1-1); the Judgment Denying Debtor's Discharge (ECF 2-2); and the Order Certifying Judgment as Final. ECF 2-3. These were the only orders of the Bankruptcy Court that Smith-Scott identified in her Notice of Appeal (ECF 1) and her Amended Notice of Appeal. ECF 2. No other orders or decisions of the Bankruptcy Court are before this Court on appeal. To the extent that either appellant or appellee discuss prior decisions of the Bankruptcy Court, that discussion is relevant only to the extent it pertains to the orders at issue. Put another way, other decisions of the Bankruptcy Court are not relevant to the appeal.

### A. Bankruptcy Court's Jurisdiction

Smith-Scott argues that the Bankruptcy Court did not have jurisdiction to hear the Discharge Action because she had moved to withdraw the reference as to her bankruptcy, under 28 U.S.C. § 157(d), and sought to transfer the case to the district court, on the basis of a variety of allegations not relevant to this appeal. *See* ECF 10 at 19-20; *see* Case 14-25022, Doc. 401. I note, however, that in the Jurisdictional Statement in her brief, Smith-Scott asserts: "The Bankruptcy Court had jurisdiction to enter the final order pursuant to 28 U.S.C. §§ 157(a), 157(b)(1) and 1334." ECF 10 at 8.

9

The motion to withdraw the reference led to a new civil case before Judge Russell of this Court. *See Smith-Scott v. Liebmann*, GLR-16-2770. After this appeal had been briefed, Judge Russell denied the motion to withdraw the reference. *See id.* at ECF 3. Moreover, at the time the Discharge Action was decided, the reference of Smith-Scott's case to the bankruptcy court had not been withdrawn. Bankruptcy Rule 5011(c) provides that the filing of a motion to withdraw "shall not stay the administration of the case or any proceeding therein before the bankruptcy judge." Fed. R. Bankr. P. 5011(c). Therefore, the bankruptcy court still had jurisdiction at the time the Discharge Action was decided.

Smith-Scott also contends that she had the right to a jury trial in the Bankruptcy Court, although she did not squarely raise this contention in her designation of issues to be presented on appeal. ECF 10 at 28. This contention is erroneous. The Discharge Action was decided on a motion for summary judgment, which is never addressed by a jury in any context. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 221 n.12 (4th Cir. 1978). Moreover, the issue of whether Smith-Scott was entitled to a discharge is not one for which she was entitled to a jury. *See In re Varney*, 81 F.3d 152 (Table), at *2 (4th Cir. 1996); *see also U.S. v. Stanley*, 595 F. App'x 314, 320-21 (5th Cir. 2014); *In re Hashemi*, 104 F.3d 1122, 1124 (9th Cir. 1997); *In re McLaren*, 3 F.3d 958, 960 (6th Cir. 1993); *In re Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991).

### B. Sufficiency of the Evidence

Smith-Scott suggests that the Bankruptcy Court erred by granting summary judgment because there was either a dispute of material fact or insufficient evidentiary proof that Smith-Scott had refused to obey the court's order. ECF 10 at 32-46. Her argument does not pertain to the question at hand. Smith-Scott cites numerous purported errors made by the judge, the U.S. Trustee, and others in her bankruptcy proceedings. *See id.* But, she fails to discuss the actual

issue before the Bankruptcy Court in the Discharge Action: Whether summary judgment was appropriate *on the question of whether Smith-Scott refused to obey a court order*. In the Discharge Action, the U.S. Trustee moved for summary judgment, asserting that because "there is no genuine dispute of Debtor-Defendant's willful disobedience to lawful orders of court, she cannot obtain a discharge and the U.S. Trustee is entitled to judgment as a matter of law." UST App'x at 1379 (summary judgment motion). Smith-Scott fails to present any evidence that the U.S. Trustee was wrong to state this, or that the Bankruptcy Court was wrong to agree.

In Smith-Scott's list of issues to be presented on appeal, filed pursuant to Fed. R. Bankr. P. 8009, she contended that the Bankruptcy Court erred by granting summary judgment because the U.S. Trustee "had not supported its allegations with the necessary evidentiary proof." ECF 4, ¶ 2. Notwithstanding the lengthy briefing (ECF 10 at 29-46), Smith-Scott's argument can be distilled to two assertions: First, that the U.S. Trustee did not point to any depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or "other materials," that would support granting summary judgment. *Id.* at 30-31. Second, Smith-Scott lists a number of "issues," none of which raise a dispute of material fact as to whether Smith-Scott refused to obey a court order. *Id.* at 32-46. Rather, her "evidence" impugns the motives of the Chapter 7 trustee and the decisions of the Bankruptcy Court in prior proceedings. *Id.* I make no findings as to these contentions, because they are simply irrelevant to the matters on appeal.

As a threshold matter, the "issues" Smith-Scott identifies all pertain to rulings that occurred in her underlying bankruptcy case, Case 14-25022-JFS. However, as previously discussed, Smith-Scott has appealed three orders of the Bankruptcy Court in the adversary proceeding brought by the U.S. Trustee, Case 16-297-JFS, not in the bankruptcy case itself.

11

Courts have recognized that adversary proceedings are "discrete judicial units," and that an appeal in one proceeding cannot change the rulings of another. *See In re Dorsey*, 870 F.3d 359, 362 (5th Cir. 2017); *see also In re Dietrich*, 490 F. App'x 802, 804 (6th Cir. 2012) (noting that "the main bankruptcy case and adversary proceeding must be treated as distinct for the purpose of appeal"); *In re Boca Arena, Inc.*, 184 F.3d 1285, 1286 (11th Cir. 1999). As such, Smith-Scott may not relitigate decisions made in another proceeding and not before this Court.

I note that in the introductory portion of appellant's brief, Smith-Scott contends that the U.S. Trustee "did not provide evidence that the Appellant purposely intended to hinder or delay the bankruptcy liquidation." *Id.* at 14. Appellee responds, correctly, that hindering or delaying a bankruptcy liquidation is not an element of the U.S. Trustee's claim under 11 U.S.C. § 727(a)(6) that Smith-Scott refused to obey a lawful court order. ECF 13 at 27-28. However, it is an element of Count 2 of the Discharge Action complaint under 11 U.S.C. § 727(a)(2). UST App'x at 1368. The U.S. Trustee asserts that "the motion for summary judgment . . . [was] not made under this subsection." ECF 13 at 28.

Although the argument section of the motion for summary judgment discusses Smith-Scott's refusal to obey an order and not any intent to hinder or delay, the U.S. Trustee did not specify on which count of the Complaint summary judgment was being sought. UST App'x at 1373-80. And, although appellee repeatedly refers to its motion as one for "partial summary judgment" (*see, e.g.*, ECF 13 at 20, 21, 24), the motion was not styled as "partial," nor was the Bankruptcy Court's order granting it. *See* UST App'x 1648.

Nevertheless, the order did specify that the motion was granted because appellant "did willfully disobey lawful Orders of this Court, as specified in the Complaint and the Motion for

Summary Judgment." *Id.* at 1649. Although Smith-Scott may have been confused as to the grounds on which her discharge was denied, the outcome of her appeal is unchanged.

As to appellant's assertion that insufficient evidence was presented to enter summary judgment, appellee responds: "In her motion for partial summary judgment, the United States Trustee recited the full history of Ms. Smith-Scott's receipt of the Turnover Orders and refusal to comply, as reflected in the bankruptcy case docket." Furthermore, appellee observes that a court may "properly take judicial notice of its own records." *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990). Here, as in *Anderson*, the Court may take judicial notice of all bankruptcy proceedings. *See id.* (noting that "the Bankruptcy Court is considered 'a unit of the district court' under 28 U.S.C. § 151").

At the close of the summary judgment hearing, the Bankruptcy Court found that the facts recited in the U.S. Trustee's motion for summary judgment were reflected "chapter and verse" by the docket and the court's prior orders. UST App'x at 1680-81. I find no error in that determination.

### C. Allegations of Misconduct

Smith-Scott argues that the Bankruptcy Court "abused its discretion" by entering summary judgment in the Discharge Action, despite Smith-Scott's allegations of misconduct by the Chapter 7 trustee. ECF 10 at 46. This argument appears to be based primarily on Smith-Scott's impression that the billing rates of the Chapter 7 trustee and his attorney were excessive. *Id.* at 48-50. Whether or not the rates were excessive was not at issue in the Discharge Action. As noted, the Discharge Action only concerned whether or not Smith-Scott had refused to obey a court order. Therefore, Smith-Scott's assertions are not appropriate to consider on appeal.

### D. Equal Protection

The fourth issue on appeal, as articulated by Smith-Scott, is whether the Bankruptcy Court erred in granting summary judgment when appellant's constitutional rights under the Fifth and Fourteenth Amendments had been violated, in that she "strongly believed that she was discriminated against by the Bankruptcy Court." ECF 10 at 50, 52. Essentially, Smith-Scott asserts that the Bankruptcy Judge discriminated against her "due to her past performance in his court room," because she is a pro se litigant, because she is an attorney seeking to utilize the bankruptcy code, and because "she is a minority woman who is managing real property." *Id.* at 52. Smith-Scott then asserts that "the discrinatory nature of the proceedings had a cooling effect on the proceedings and it prevented the Appellant from being able to use various rules of law that were applicable to this case." *Id.* She then lists a variety of state and federal statutes, as well as the Uniform Commercial Code, asserting that "[a] similarly situated individual" would have been allowed to rely on these statutes to support various elements of a bankruptcy case. *Id.* at 53-54.

It is unclear whether "the discriminatory nature of the proceedings" caused Smith-Scott to be unable to invoke these statutes, or whether the "cooling effect," caused by the alleged discrimination, prevented her from asserting her legal defenses. In any case, it is not evident how any of the statutes Smith-Scott cites might have aided her in the Discharge Action, which, again, only concerned whether appellant had refused to obey a court order.[5]

---

[5] Smith-Scott cites: Article 9 of (presumably, the Maryland codification of) the Uniform Commercial Code, which generally concerns secured transactions; the "Dodd-Frank Wall Street Reform and Consumer Protection Act," 12 U.S.C. § 5301, which defines various terms but provides no specific protections; the Home Affordable Modification Program (HAMP) and Waterfall Programs, 12 U.S.C. § 5219, which concerns mortgage assistance but does not create a private right of action, *see Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 917 (D. Md. 2012), and in any case does not relate to orders of the Bankruptcy Court; the "Truth and [*sic*]

As appellee points out, Smith-Scott offers no evidence of this discrimination beyond the Bankruptcy Court's adverse rulings, and no evidence at all that any of those rulings were based on Smith-Scott's membership in any protected class. ECF 13 at 33-35. And, it is well-established that "[a] presiding judge is not . . . required to recuse himself simply because of 'unsupported, irrational or highly tenuous speculation.'" *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) (quoting *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998)).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Glenn v. Wells Fargo Bank, N.A.*, No. 17-1308, 2017 WL 4329721, at *2 (4th Cir. Sept. 29, 2017) (citations omitted). "Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555. There is no reason to stray from this view. As noted, Smith-Scott has frequently appealed, and Judge Schneider's decisions have been consistently affirmed.

To the extent that Smith-Scott bases her discrimination claim on Judge Schneider's prior rulings, it must fail, because Smith-Scott has not established that the judge's rulings were incorrect, much less that they were based on her race, gender, or pro se status. To the extent her claim is based on other factors, it fails because Smith-Scott has offered no evidence for any claim of racial or gender discrimination.

### E. The Hearing

Finally, Smith-Scott asks this Court to evaluate statements made by Judge Schneider at the summary judgment hearing on January 19, 2017, and determine whether they "reflect[] the discrimination of this court." ECF 10 at 54. Presumably, she asks this Court to vacate the

---

Lending Act," 12 CPR [C.F.R.] § 226, which does not concern bankruptcy; and "Maryland Code, Real Property, Section 7 and Section 14," Md. Code, Real Property Article § 7-101 and Md. Rule 14-211, which concern the stay of foreclosures but not bankruptcies.

Bankruptcy Court's summary judgment ruling on the basis of personal bias allegedly implied by Judge Schneider's statements.

At the summary judgment hearing, due to a recent appendectomy (ECF 4, ¶ 5), Smith-Scott requested leave to sit, rather than stand, while she addressed the court. ECF 10 at 54; UST App'x at 1664. Judge Schneider granted her request, without asking for a reason. UST App'x at 1664. Later in the hearing, it appears from the record that Smith-Scott stood up during a heated exchange with Judge Schneider. *Id.* at 1676. Judge Schneider asked, "And are you able to stand up now, Ms. Smith-Scott? I thought you had to sit down." *Id.* The exchange continued *(id.* at 1676-78):

> MS. SMITH-SCOTT: No, I -- to be honest with you, Your Honor --
>
> THE COURT: Ma'am, if you wish to leave, that's fine. I'm going to continue to speak after you leave.
>
> MS. SMITH-SCOTT: Your Honor, I have no problem with that.
>
> THE COURT: Do you wish to leave?
>
> MS. SMITH-SCOTT: I do wish to leave, and I'm going to go ahead and leave.
>
> THE COURT: Very well, thank you. And I will now excuse you from the courtroom.
>
> MS. SMITH-SCOTT: Thank you.
>
> THE COURT: Thank you very much.
>
> MS. SMITH-SCOTT: And I wasn't going to ask, so I appreciate your giving it to me, giving me permission.
>
> THE COURT: Thank you. Absolutely. I'm glad that you're able to stand up and walk.
>
> MS. SMITH-SCOTT: I was going to stand up and walk, anyway. I was going to stand up and walk out.
>
> THE COURT: Well, you said you couldn't stand up before when you were addressing me.

16

MS. SMITH-SCOTT: No, I asked you if I could sit down, and you said yes. Do you regret saying that?

THE COURT: I assumed that was because you were physically unable to stand.

MS. SMITH-SCOTT: And you're right, because I wasn't feeling good.

THE COURT: Now, if you wish to leave, that's fine with me.

MS. SMITH-SCOTT: I'm going to leave, okay? And that's exactly what I'm going to do.

THE COURT: Please. Please accept my thanks for your exiting the courtroom now.

MS. SMITH-SCOTT: Oh, don't mention it.

THE COURT: And I will finish without interruption.

MS. SMITH-SCOTT: I'm sure you will. Here we have this US Trustee who goes to lunch with you on a daily basis here, bringing you in -- bringing me in. So do what you feel like you need to do. Do what you need to do.

THE COURT: Let the record indicate that Ms. Smith-Scott has now exited the courtroom, and present, although not having identified himself, is (indiscernible), Esquire, and Edmund A. Goldberg, Esquire, who is representing the Office of the United States Trustee.

Smith-Scott also asserts that Judge Schneider laughed as she left the courtroom. ECF 10 at 54. She argues that a reasonable observer of this exchange would not believe that Judge Schneider was impartial. *Id.* at 55. She cites *Liteky v. United States*, 510 U.S. at 564, in which the Court said: "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified."

I agree that *Liteky* is the proper standard here. And, I agree that the record suggests that Judge Scheider was annoyed with Smith-Scott. However, mere "expressions of impatience, dissatisfaction, annoyance, and even anger" do *not* establish bias or partiality. *Liteky*, 510 U.S. at 555-56. In my view, there is nothing in Judge Schneider's conduct at the summary judgment

17

hearing which would cause a reasonable observer to conclude that appellant would be unlikely to receive a fair and impartial hearing.

### IV. Conclusion

Appellant asks this to Court vacate the Bankruptcy Court's order granting summary judgment in the Discharge Action. None of the grounds for her appeal suggest that such relief is warranted. Therefore, the disputed orders of the Bankruptcy Court shall be AFFIRMED.

An Order follows.


Date: January 25, 2018  /s/
Ellen Lipton Hollander
United States District Judge